PEOPLE v INGRAM

Docket No. 90698. Argued November 5, 1991 (Calendar No. 10).
    Decided May 1, 1992. Rehearing denied *post,* 1242.
    Marion B. Ingram was charged in the Kent Circuit Court with
        operating a motor vehicle while under the influence of intoxi-
        cating liquor, third offense, on the basis of 1977 and 1983 OUIL
        convictions in the 5th District Court, a 1982 OUIL conviction in
        the 61st District Court, and a 1983 OUIL conviction in the
        Ottawa Circuit Court. The court, George S. Buth, J., held the
        5th District Court convictions infirm because the defendant was
        not represented by counsel, but denied the defendant's motion
        for reduction of the charged offense to OUIL, second offense,
        finding the Ottawa Circuit Court and 61st District Court convic-
        tions were valid, because the defendant was represented by
        counsel, and could be used to establish the factual predicate for
        OUIL, third offense. The Court of Appeals, WAHLS, P.J., and
        GILLIS and MAHER, JJ., denied interlocutory review (Docket No.
        110959). Thereafter, the defendant conditionally pleaded guilty
        of OUIL, third offense, while preserving the right to appeal the
        validity of the district court conviction. The court, Dennis C.
        Kolenda, J., accepted the plea, but denied reconsideration of
        the validity of the district court conviction, concluding that a
        claim that a court failed to adhere to the applicable plea-taking
        requirements during the plea proceeding does not provide the
        defendant an opportunity to challenge by later attack. There-
        after, the defendant moved in the 61st District Court to with-
        draw his 1982 guilty plea. The court, James B. Howard, J.,
        vacated the plea and reinstated the case for trial. Subsequently,
        the Kent Circuit Court denied the defendant's motion to with-
        draw the 1989 plea of guilty of OUIL, third offense. The Court of
        Appeals, NEFF, P.J., and MAHER and HOOD, JJ., reversed,
        entering a conviction of OUIL, second offense (Docket No.
        124840). The people appeal.
        In an opinion by Justice RILEY, joined by Justices BRICKLEY,
    BOYLE, GRIFFIN, and MALLETT, the Supreme Court *held:*
        The failure of a plea-taking court to adhere to applicable

REFERENCES
Am Jur 2d, Criminal Law §§ 469-478.
See the Index to Annotations under Collateral Attack; Guilty Plea.

plea-taking requirements during the plea proceeding does not provide a defendant the opportunity to challenge by collateral attack. The validity of such a plea, where the defendant was represented by counsel when entering the plea or where the defendant intelligently waived the right to counsel, including the right to court-appointed counsel if indigent, is unassailable.

1. Federal and state courts have consistently found that considerations of finality and administrative consequences must become part of the process to assure the achievement of proceedings that are consistent with the rudimentary demands of fair procedure, particularly when confronted with concerns surrounding the procedural issue of collateral attack of plea-based convictions. Only those prior plea convictions that deny a defendant the right to counsel should be subject to collateral attack because such a denial impugns the integrity of the conviction and raises doubts about the guilt of the accused.

2. Procedural safeguards are provided for plea proceedings in the context of direct appeals. At some point, the technical requirements of these safeguards must be balanced with considerations of finality and administrative consequences in order to best achieve proceedings consistent with the rudimentary demands of fair procedure. Such a point is reached when confronted with collateral attack. The concerns involved in collateral attacks are different than those on direct appeal. In order to best achieve the legitimate goals of finality and the efficient and effective administration of justice, as well as the goals of all of the applicable plea-taking requirements and procedural safeguards, a policy must be followed which provides incentives for raising claims on direct review where proper relief can be afforded and error corrected.

Justice LEVIN, concurring, stated that consistent with the rule of *Guilty Plea Cases,* 395 Mich 96 (1975), the defendant's 1982 plea-based conviction need not be set aside merely because the trial court did not advise him pursuant to DCR 785.4(e)(1) when he pleaded guilty that he would not have a trial, although a different question might be presented were a court to fail to so advise a defendant pursuant to MCR 6.610(E)(3).

A person charged with a misdemeanor, who pleads guilty and is placed on probation, has little incentive to challenge the conviction, and thus is not likely to challenge the process by which the plea was accepted or to appeal. Therefore, if a failure of a court to adhere to applicable requirements during a plea proceeding cannot be challenged unless a timely appeal has been filed, there may be increasing noncompliance with the .

plea-taking procedures where the court anticipates placing an accused on probation.

Because both the Supreme Court and a defendant who pleads guilty have an interest in assuring that the procedures for acceptance of a guilty plea are observed, and because the Court does not have a method of monitoring noncompliance with plea-taking procedures, except providing such defendants with an opportunity to seek to set aside their plea-based convictions at such times as they have an incentive to challenge the convictions, the Court's interest in assuring substantial compliance with plea-taking procedures may outweigh the interest in finality in particular cases.

Reversed.

Chief Justice CAVANAGH, dissenting, stated that the majority's rejection of established precedent, allowing collateral attack on prior convictions, renders useless the concept of stare decisis. Under *People v Jaworski,* 387 Mich 21 (1972), a defendant must be advised of the right to trial by jury, the right to confront an accuser, and the privilege against self-incrimination. In *People v Crawford,* 417 Mich 607 (1983), it was noted that these rights are of such importance that the failure to advise of them requires that a guilty plea be set aside. Rather than construing the precedent established in *Crawford,* the majority adopts the concurring opinion that advocated allowing collateral attack only where a plea is taken in the absence of counsel.

Recognizing that the right to counsel may be paramount does not lead to the conclusion that the breach of all other rights must be overlooked or that a trial court's failure to follow applicable court rules must be ignored. This is not a question of constitutional dimension; rather, it is a question of policy that was resolved when the court rules that require these rights to be explained to the defendant on the record were adopted.

In this case, although represented by counsel, the record does not indicate that the defendant was informed of even the basic right to trial. There is no justification for elevating the mundane concepts of finality and administrative consequence over that of fair procedure. On this issue, the decision of the Court of Appeals should be affirmed.

In addition, MCL 257.625(6); MSA 9.2325(6) specifically requires two prior convictions as the linchpin of OUIL, third offense. Because one of the convictions used to establish the offense at issue was set aside, this case should be remanded to the trial court for a determination whether the factual under-

pinning for a conviction of and sentence for OUIL, third offense, still existed.

186 Mich App 615; 465 NW2d 39 (1990) reversed.

PLEADING — PLEA-TAKING PROCEDURES — COLLATERAL ATTACK.

The failure of a plea-taking court to adhere to applicable plea-taking requirements during the plea proceeding does not provide a defendant the opportunity to challenge by collateral attack; the validity of such a plea, where the defendant was represented by counsel when entering the plea or where the defendant intelligently waived the right to counsel, including the right to court-appointed counsel if indigent, is unassailable.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *William A. Forsyth,* Prosecuting Attorney, *Timothy K. McMorrow,* Chief Appellate Attorney, and *Nadine Renee Dahm,* Assistant Prosecuting Attorney, for the people.

*E. Craig Smith* for the defendant.

RILEY, J. In this case we are asked to determine whether failure by a plea-taking court to adhere to applicable plea-taking requirements during the plea proceeding provides a defendant the opportunity to challenge the validity of a conviction so obtained in a collateral attack.[1] Collateral attacks, as opposed to direct appeals, require consideration of the interests of finality and of administrative consequences.

Therefore, for the reasons set forth in *People v Crawford,* 417 Mich 607, 614-616; 339 NW2d 630 (1983) (BRICKLEY, J., concurring), we conclude that the Court of Appeals erred in reversing defendant's conviction. Accordingly, we reverse.

## I. FACTS AND PROCEEDINGS

On May 8, 1987, defendant Marion B. Ingram

[1] Collateral attacks encompass those challenges raised other than by initial appeal of the conviction in question.

was arrested for operating a motor vehicle under the influence of intoxicating liquor or while having a blood alcohol content of 0.10 percent (OUIL). MCL 257.625; MSA 9.2325. Defendant was charged in the Kent Circuit Court with OUIL, third offense. The complaint made reference to four underlying OUIL convictions. Two of these convictions were obtained in the 5th District Court, one in 1977 and the other in 1983. The third conviction was obtained in the 61st District Court in 1982, the fourth in the Ottawa Circuit Court in 1983. On March 18, 1988, defendant moved for reduction of the charged offense to OUIL, second offense, claiming that three of the four prior plea-based convictions were invalid for the purpose of establishing the factual predicate for OUIL, third offense. Defendant conceded the validity of the Ottawa Circuit Court plea-based conviction.

On April 22, 1988, Kent Circuit Judge George S. Buth ruled that the two 5th District Court prior convictions were infirm (having been obtained without counsel). However, Judge Buth ruled that the 1982 61st District Court conviction was not infirm (because defendant had been represented by counsel) and could be used to establish the factual predicate for OUIL, third offense. Because two valid underlying OUIL convictions remained, defendant's motion to reduce the charged offense was denied. On December 6, 1988, the Court of Appeals denied defendant's application for interlocutory review of this issue.

On March 1, 1989, defendant entered a conditional plea of guilty of OUIL, third offense, preserving the right to appeal the validity of his prior 61st District Court conviction. Circuit Judge Dennis C. Kolenda, to whom the case had been reassigned, accepted defendant's plea.

On June 6, 1989, Judge Kolenda denied defendant's motion for reconsideration of the issue concerning the validity of the 61st District Court prior conviction, concluding that a claim that a court failed to adhere to the applicable plea-taking requirements during the plea proceeding does not provide defendant the opportunity to challenge by later attack. On July 5, 1989, rather than appealing, defendant filed a motion in the 61st District Court to withdraw his 1982 guilty plea which was used to establish the factual predicate for OUIL, third offense in the present case. On August 8, 1989, 61st District Judge James B. Howard vacated the guilty plea, set the conviction aside, and reinstated the 1982 case for trial.

On September 20, 1989, Judge Kolenda denied defendant's motion to withdraw his 1989 plea of guilty to OUIL, third offense. Defendant then filed an application for leave to appeal in the Court of Appeals. However, while the application was pending, the circuit court found that defendant had violated the terms of his delayed sentence status. Therefore, on November 27, 1989, the court revoked that status and sentenced him to eighteen months to five years in prison. On February 5, 1990, defendant's pending application for leave to appeal was dismissed without prejudice. Defendant then appealed as of right.

On December 17, 1990, the Court of Appeals reversed the defendant's conviction and remanded the case for entry of a conviction of OUIL, second offense, and resentencing thereon.

On March 22, 1991, this Court granted leave to appeal.[2]

## II. ANALYSIS

Federal and state courts have consistently found that considerations of finality and administrative

_____
[2] 437 Mich 926 (1991).

consequences must become part of the process with which we assure the achievement of proceedings that are consistent with the rudimentary demands of fair procedure.[3] Such considerations have been found to be of particular significance in cases where courts have been confronted with the concerns surrounding the procedural issue of collateral attack of plea-based convictions.[4] We agree and therefore hold that failure of a plea-taking court to adhere to applicable plea-taking requirements during the plea proceeding does not provide

---

[3] See *McCleskey v Zant,* 499 US —; 111 S Ct 1454, 1468-1469; 113 L Ed 2d 517 (1991); *Coleman v Thompson,* 501 US —; 111 S Ct 2546, 2563-2565; 115 L Ed 2d 640 (1991); *Murray v Carrier,* 477 US 478, 487-492; 106 S Ct 2639; 91 L Ed 2d 397 (1986); *Engle v Isaac,* 456 US 107, 126-128; 102 S Ct 1558; 71 L Ed 2d 783 (1982); *Wainwright v Sykes,* 433 US 72, 88-89; 97 S Ct 2497; 53 L Ed 2d 594 (1977); *Henderson v Kibbe,* 431 US 145, 154, n 13; 97 S Ct 1730; 52 L Ed 2d 203 (1977); *Stone v Powell,* 428 US 465, 491 and n 31; 96 S Ct 3037; 49 L Ed 2d 1067 (1976).

[4] *United States v Timmreck,* 441 US 780, 784; 99 S Ct 2085; 60 L Ed 2d 634 (1979) ("concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas").

The United States Supreme Court has never forbidden the use of plea-based convictions alleged or found to be in violation of plea proceeding requirements. We recognize, however, that there has been some case law development in the federal courts recently which may call into question the use of prior plea-based convictions for the purpose of sentence enhancement when such convictions are alleged or found to be in violation of plea proceeding requirements. See, e.g., *Dunn v Simmons,* 877 F2d 1275 (CA 6, 1989) (the court, through a writ of habeas corpus, found that the State of Kentucky could not prevent a collateral attack on a prior felony conviction when it was used for sentence enhancement. The prior felony conviction was based on a guilty plea that the defendant claimed was in violation of *Boykin v Alabama,* 395 US 238; 89 S Ct 1709; 23 L Ed 2d 274 [1969]). But in any event, we realize that the present case is not a sentence enhancement case.

Furthermore, we note that the United States Supreme Court has continued to recognize and emphasize the importance that the considerations of finality and administrative consequences have in assuring the achievement of proceedings that are consistent with the rudimentary demands of fair procedure. See *McCleskey,* n 3 *supra,* 111 S Ct 1468-1469 ("we have taken care in our habeas corpus decisions to reconfirm the importance of finality. . . . Finality has special importance in the context of a federal attack on a state conviction").

a defendant the opportunity to challenge by collateral attack.[5] The validity of such a plea, where the defendant was represented by an attorney when entering the plea or when the defendant intelligently waived the right to counsel, including the right to court-appointed counsel if indigent, is unassailable.[6]

The issue of collateral attack was not directly presented to, nor addressed by, the Courts in *Boykin v Alabama,* 395 US 238; 89 S Ct 1709; 23 L Ed 2d 274 (1969), *People v Jaworski,* 387 Mich 21; 194 NW2d 868 (1972), or *People v Yost,* 433 Mich 133; 445 NW2d 95 (1989). The only time that this Court has addressed the issue of a collateral attack of a prior plea-based conviction was in *People v Crawford.*

In *Crawford,* the majority stated:

> A conviction defective under *Jaworski* can be challenged by a timely motion by the defendant to quash the supplemental information or to strike from the supplemental information the defective

---

[5] See *Hill v United States,* 368 US 424; 82 S Ct 468; 7 L Ed 2d 417 (1962), and *Timmreck,* n 4 *supra.* The Court held in these cases that " 'collateral relief is not available when all that is shown is a failure to comply with the formal requirements of the [applicable plea-taking requirements].' " *Timmreck, supra* at 785 (citing *Hill, supra* at 429).

[6] In *United States v Broce,* 488 US 563, 574; 109 S Ct 757; 102 L Ed 2d 927 (1989), the Court stated that

> "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not· be collaterally attacked." That principle controls here. Respondents have not called into question the voluntary and intelligent character of their pleas, and therefore are not entitled to the collateral relief they seek.

Mr. Ingram does not call into question the voluntary and intelligent character of his prior 61st District Court plea, and therefore he is not entitled to the collateral relief he seeks. See also *Timmreck,* n 4 *supra* at 783-784 (where defendant's only claim is of a technical violation of a procedural rule—a claim that could have been raised on direct appeal—there is no justification for allowing a collateral attack to serve for an appeal).

conviction. To be timely, such a motion must be
made before a defendant's plea of guilty or nolo
contendere is accepted. [*Id.* at 613-614.]

However, because the defendant did not make a
timely motion, the *Crawford* Court affirmed his
conviction. Thus, by refusing to allow a collateral
attack, the Court was not called upon to actually
implement the holding it seemed to announce in
the above-quoted paragraph. Rather, the Court
conceded in its holding that it did not have the
factual underpinnings from which to make a rul-
ing regarding the propriety of a collateral attack
of a prior plea-based conviction.

However, today, with the issue directly before
us, we adopt Justice BRICKLEY's analysis in his
concurring opinion in. *Crawford,* reasoning that
only those prior plea convictions taken in violation
of *Gideon v Wainwright,* 372 US 335; 83 S Ct 792;
9 L Ed 2d 799 (1963), should be subject to collat-
eral attack.

Denial of the right to counsel mandated by
*Gideon* is a deprivation of rights altogether differ-
ent from the issues before us here. The denial of
the right to counsel impugns the integrity of the
conviction, raising doubts about the guilt of the
accused. It is for that reason, and that reason only,
that the use of a counselless conviction is forbid-
den in collateral proceedings notwithstanding that
the defendant did not raise the issue on direct
review. The requirement of a record waiver of the
right to remain silent, to cross-examine witnesses
against him, and to be tried by a jury which is
required by *Boykin-Jaworski,* while undoubtedly
important, pales beside the right to counsel.

The United States Supreme Court has never
forbidden the use of *Boykin*-violative convictions in
state recidivist proceedings. A majority of this
Court does so today because *Boykin* rights are of

constitutional stature. Such reasoning begs the question. The right to be free from unreasonable searches, the right to effective assistance of counsel, the right to a properly instructed jury, and countless other rights are also of a constitutional nature. Are we now to assume that all violations of constitutional rights not raised during direct review of a conviction may now be reviewed during habitual offender proceedings? I agree with Justice Stevens, writing for a unanimous Supreme Court in *United States v Timmreck,* 441 US 780, 784; 99 S Ct 2085; 60 L Ed 2d 634 (1979) (failure to advise defendant of a special parole term as required by F R Crim P 11 cannot be raised collaterally) when he states:

"For the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas.

" 'Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice.' " [*People v Crawford, supra* at 615-616.]

We are also in agreement with Justice BRICKLEY's conclusion:

The adoption by the majority of this rule does nothing to further the interests of finality. Instead of providing incentive for raising claims on direct review where proper relief can be afforded and the error corrected, the majority allows a claim dormant for ten years to be resurrected when the defendant's tactical considerations so require. [*Id.* at 616.]

Moreover, we find the reasoning presented by Justice BRICKLEY in *Crawford* consistent with the reasoning of the Courts in *Boykin* and *Jaworski.* Neither *Boykin* nor *Jaworski* dealt with collateral attacks. These cases were decided in the context of

direct appeals. *Boykin* and *Jaworski* provide procedural safeguards for plea proceedings. However, the technical requirements of these procedural safeguards must at some point be balanced with considerations of finality and administrative consequences in order to best achieve proceedings that are consistent with the rudimentary demands of fair procedure. We believe when confronted with collateral attack, such a point is reached. See *Coleman v Thompson,* 501 US —; 111 S Ct 2546, 2564; 115 L Ed 2d 640 (1991); *Engle v Isaac,* 456 US 107, 126-127 and ns 31-32; 102 S Ct 1558; 71 L Ed 2d 783 (1982).

The procedural safeguards provided for in *Boykin* and *Jaworski,* and other requirements of plea-taking proceedings, were not intended to broaden the avenues of collateral attacks on prior plea-based convictions. In fact, one of the purposes underlying the decisions in these cases was to provide a procedure that would "forestall[ ] the spin-off of collateral proceedings that seek to probe murky memories." *Boykin, supra* at 244. In *Jaworski,* the Court, after reaching its holding, went on to note its concern regarding the waste of judicial time spent on direct review of these cases. Although such direct review was held to be warranted by the holding in *Jaworski,* it is clear that the Court was concerned with the effect considerations of finality and administrative consequences would have on such a holding. The Court, evidencing its concern, said:

> In this case, if we were to follow the philosophy that assuring counsel insures understanding pleas, we should dismiss the petition for review—somewhat leaving counsel hoisted on his own petard as far as serving his client. On the other hand, if we should grant relief, we would in effect be passing judgment *sub silentio* that we could not as a

judicial procedure rely on counsel to fully advise a defendant of his rights.

This leaves unspoken a theoretical further alternative, namely a criminal trial as an adversary procedure not only between defendant and prosecutor, but between defendant and the court as well. The implications of this certainly do not comport with this Court's philosophy of the proper administration of justice. As a consequence, we shall look to counsel in all criminal cases to advise their clients to the best of their ability, and as well or better than the high standard that the State Bar will seek to impose. But further than that this Court, regarding attorneys as officers of the court, will look to them to coöperate with the courts and not only see that their clients are personally well advised by them, but that the court will be assisted to see that all of a client's rights are protected on the record. An attorney will do this not only in fulfillment of his oath and duty as an attorney, but also because any petition for review that is based on the defendant seeking a plea review on the grounds he did not enter his plea understandingly is a reflection on both the court and the defendant's counsel, and incidentally insofar as proper procedure could have avoided the necessity of review, a burden on the administration of justice, and a disservice, if not an injustice, to others who have occasion to employ or operate the machinery of justice. [*Id.* at 32-33.]

We find that Justice BRICKLEY's declaration in *Crawford* represents the legitimate extension of the concerns expressed in *Boykin* and *Jaworski* to the situation where a claim of a defective plea proceeding is raised in a collateral attack. This Court has rejected in the past the claim that *Boykin* and *Jaworski* provide a remedy for every defendant who makes any attack on the validity of their plea proceeding.

In *People v Kuchulan,* 390 Mich 701, 704; 213 NW2d 95 (1973), this Court stated that *Boykin*

should not be read as imposing on the state or Federal courts as an absolute imperative in every case a requirement that a defendant be informed before he pleads guilty of the three constitutional rights mentioned in Justice Douglas' opinion. . . .

Whether to require that this information be imparted as a precondition to the acceptance of a plea of guilty is a question of policy for this Court to decide, and not one of Federal constitutional law. We agree that a judge should be obliged to so inform a defendant pleading guilty as attested by our votes to adopt amended rule [GCR 1963] 785.3-785.11. We also accept the authority of *Jaworski* under the doctrine of stare decisis; the individual Justices of this Court, just as the other members of the profession, are bound by its decisions until a majority of the Court adopts a different view.

The rule of a case is, however, frequently less expansive than the reasoning and generalizations in the opinion of the Court. *Jaworski,* like most cases, was decided in the context of the facts of that case.

*Jaworski* was not decided in the context of a collateral attack. The concerns involved in collateral attacks are quite different than those on direct appeal and implicate considerations of finality and administrative consequences.[7] We are per-

---

[7]   The strong interest in preserving the finality of judgments, see, e.g., *Blackledge v Allison* [431 US 63, 83; 97 S Ct 1621; 52 L Ed 2d 136 (1977)] (Powell, J., concurring); *Schneckloth v Bustamonte,* 412 US 218, 256-266 [93 S Ct 2041; 36 L Ed 2d 854 (1973)] (Powell, J., concurring), as well as the interest in orderly trial procedure, must be overcome before collateral relief can be justified. For a collateral attack may be made many years after the conviction when it may be impossible, as a practical matter, to conduct a retrial. [*Henderson,* n 3 *supra* at 154, n 13.]

   Passage of time, erosion of memory, and dispersion of witnesses may render retrial difficult, even impossible. While a [collateral attack] may, in theory, entitle the defendant only to retrial, in practice it may reward the accused with complete freedom from prosecution. [*Engle, supra* at 127-128. See also *McCleskey,* n 3 *supra,* 111 S Ct 1468.]

suaded that in order to best achieve the legitimate goals of finality and the efficient and effective administration of justice, while also achieving the goals of *Boykin* and *Jaworski,* as well as the goals of all applicable plea-taking requirements and procedural safeguards in these cases, we must follow a policy which provides incentive for raising claims on direct review where proper relief can be afforded and error corrected. See *McCleskey v Zant,* 499 US —, —; 111 S Ct 1454, 1469; 113 L Ed 2d 517 (1991); *Engle, supra* at 127-129.[8] Such a policy, we find, would do the most to insure the achievement of proceedings that are consistent with the rudimentary demands of fair procedure.[9] While this Court has not previously articulated this distinction between collateral attacks and

---

[8] Justice LEVIN in his separate opinion expressed his concern that with the majority's resolution of this case there *may* be seen increasing noncompliance by the courts with procedural rules (*post,* p 304). To the contrary, we are convinced that our resolution of this case will provide incentive to all parties, including the courts, to see that any claims of improper procedure during the taking of a plea will be immediately raised and addressed at a time when evidence is fresh, proper relief can be afforded, and any error can be corrected. See *McCleskey, supra* at 1468-1469; *Engle, supra* at 127-129. Such incentive provides fairness in the law to all parties concerned by promoting the enforcement of procedural safeguards in every case (including those cases in which the defendant, by pleading guilty, is placed on probation, and thus according to Justice LEVIN in his separate opinion and Chief Justice CAVANAGH in his dissent, does not have an incentive to make sure procedural safeguards were provided) and by reducing the costs to society and burdens placed on the judicial system by this type of collateral litigation. *Id.*

[9] Perpetual disrespect for the finality of convictions disparages the entire criminal justice system.

"A procedural system which permits an endless repetition of inquiry into facts and law in a vain search for ultimate certitude implies a lack of confidence about the possibilities of justice that cannot but war with the underlying substantive commands. . . . There comes a point where a procedural system which leaves matters perpetually open no longer reflects humane concern but merely anxiety and a desire for immobility." Bator [*Finality in criminal law and federal habeas corpus for state prisoners*], 76 Harv L R [441] at 452-453 [1963]. [*McCleskey, supra,* 111 S Ct 1469.]

direct appeals in the application and adoption of the requirements regarding plea-taking proceedings, such a distinction is now properly drawn, when for the first time the specific issue is directly before us. *Kuchulan, supra* at 704-705.[10]

For the foregoing reasons, we reverse the decision of the Court of Appeals and affirm defendant's conviction of OUIL, third offense.

BRICKLEY, BOYLE, GRIFFIN, and MALLETT, JJ., concurred with RILEY, J.

LEVIN, J. (*concurring*). Marion B. Ingram's plea of guilty of OUIL was offered and accepted in 1982 before the court rules were amended to require that, before accepting a plea of guilty, the court shall advise the accused as now set forth in MCR 6.610(E)(3).

In *Guilty Plea Cases,* 395 Mich 96, 113; 235 NW2d 132 (1975), this Court ruled that whether a particular departure from compliance with a court rule specifying the procedure for taking a guilty

---

[10] The Court of Appeals in the present case did not make a distinction between direct appeals and collateral attacks relying heavily on this Court's opinion in *Yost.* Citing *Yost* and its consideration of the conflict among its panels, the Court of Appeals held that failure to adhere to the plea-taking requirements renders the plea-based conviction infirm and thereby precludes its use.

As evidence of this conflict, the Court of Appeals cites for comparison *People v Nydam,* 165 Mich App 476; 419 NW2d 417 (1987) (concluding that the prior plea-based conviction was not subject to collateral attack), and *People v McKinnon,* 139 Mich App 362; 362 NW2d 809 (1984) (concluding that the plea-based conviction was rendered infirm for failure to comply with the applicable plea-taking requirements), but its analysis ignores the distinction between collateral attacks and direct appeals. *Nydam* dealt with a collateral attack of a prior plea-based conviction while *McKinnon* dealt with a direct appeal of a plea-based conviction. For the reasons stated previously in our analysis, we find that the Court's holdings in *Nydam* and *McKinnon* are not in conflict. The different conclusions reached by those panels were in response to the different concerns which need to be addressed in a case on collateral attack as opposed to one on direct appeal.

plea requires reversal will depend on the nature of the noncompliance.

When Ingram's plea of guilty was offered and accepted, the rule required that the defendant be advised that if his plea were accepted, he would not have a trial.[1]

I am not persuaded that Ingram's 1982 plea-based conviction should be set aside simply because the court did not advise him when he pleaded guilty that he would not have a trial.

A different question might be presented if a court were to fail to advise an accused person in substantial compliance with MCR 6.610(E)(3), effective February, 1988.[2]

The 1988 amendment provides a procedure for challenging a plea.[3] A person charged with a misdemeanor, who pleads guilty and is placed on probation, has little incentive to challenge his conviction, and therefore is not likely to challenge the plea or to appeal.

---

[1] Former DCR 785.4(e)(1).

[2] MCR 6.610 provides:

(E) Pleas of Guilty and No Contest. Before accepting a plea of guilty or no contest the court shall in all cases comply with this rule.

* * *

(3) The court shall advise the defendant of the following:

(a) the mandatory minimum jail sentence, if any, and the maximum possible penalty for the offense,

(b) that if the plea is accepted he or she will not have a trial of any kind and that he or she gives up the following rights that he or she would have at trial:

(i) the right to have witnesses called for his or her defense at trial,

(ii) the right to cross-examine all witnesses called against him or her,

(iii) the right to testify or to remain silent without an inference being drawn from said silence,

(iv) the presumption of innocence and the requirement that his or her guilt be proven beyond a reasonable doubt.

[3] MCR 6.610(E)(7).

If a "failure of a plea-taking court to adhere to applicable plea-taking requirements during the plea proceeding"[4] cannot be challenged unless a timely appeal has been filed, and is so far "unassailable,"[5] that the writ will never run, we may see increasing noncompliance with the 1988 procedures in cases where the district court anticipates placing the accused on probation.

This Court, as well as a guilty pleading defendant, has an interest in assuring that the procedures required to be followed before a plea of guilty is accepted, are observed.

This Court does not have a method of monitoring noncompliance with plea-taking procedures, except providing persons convicted following a plea of guilty with an opportunity to seek to set aside their plea-based convictions at such times as they have an incentive to challenge the convictions.

This Court's interest in assuring ` substantial compliance with plea-taking procedures may outweigh the interest in finality in particular cases.

I agree in general with the observations of the Chief Justice, and would join him in an order remanding to the Court of Appeals to consider the issue not resolved.

CAVANAGH, C.J. (*dissenting*). The majority severely restricts collateral attacks on prior convictions. I dissent for two reasons. First, the majority once again rejects established precedent, thereby rendering useless the concept of stare decisis. Second, it allows a sentence for OUIL, third offense, to stand where there is only one valid prior conviction of record.

Certainty and predictability are among the key

---

[4] *Ante,* p 294.

[5] *Id.,* p 295.

determinants of fairness in the law. See *Parker v Port Huron Hosp,* 361 Mich 1; 105 NW2d 1 (1960). To ensure this predictability, the courts have traditionally been guided by the doctrine of stare decisis. *People v Jamieson,* 436 Mich 61; 461 NW2d 884 (1990). In 1983, this Court carefully and fully considered the question of allowing collateral attack on a conviction used to enhance the severity of a subsequent offense. *People v Crawford,* 417 Mich 607; 339 NW2d 630 (1983). At that time the Court expressly held:

> A conviction defective under [*People v Jaworski,* 387 Mich 21; 194 NW2d 868 (1972)] can be challenged by a timely motion by the defendant to quash the supplemental information or to strike from the supplemental information the defective conviction. [*Crawford* at 613.]

Under *Jaworski,* the defendant must be advised of the right to trial by jury, the right to confront one's accuser, and the privilege against self-incrimination. As Justice LEVIN explained in *Crawford,* these rights "are of such importance that the failure to advise of such rights requires that a guilty plea be set aside." 417 Mich 614, n 14 (citing *Jaworski* and *Guilty Plea Cases,* 395 Mich 96; 235 NW2d 132 [1975]).

Rather than construing the precedent established in *Crawford,*[1] the Court today adopts the

---

[1] The majority's attempt to distinguish *Crawford* is unpersuasive. See *ante,* pp 295-296. The defendant in *Crawford* had not made a timely motion, and, accordingly, his conviction was affirmed. But the rule of stare decisis refers to principles and points of law, not to factual situations that exist in the cases where the principles are applied. *In re Sprenger Estate,* 337 Mich 514, 523; 60 NW2d 436 (1953).

The fact remains that, in *Crawford,* this Court expressly held that collateral attacks are acceptable if the motion is timely. Even though that defendant was not protected by the rule established, this Court *did* establish the rule, and there is no basis for discarding that rule now.

concurring opinion in that case which advocated allowing collateral attack only where the plea was taken in the absence of counsel. This Court, in *Jaworski* and *Guilty Plea Cases,* recognized the importance of the right to counsel, but also assigned preëminent importance to the rights of confrontation and trial by jury and the privilege against self-incrimination. Recognizing that the right to counsel may be paramount does not lead ineluctably to the conclusion that we must overlook the breach of all other rights or ignore a trial court's failure to follow applicable court rules. I agree that this is not a question of constitutional dimension; rather, it is a question of policy.[2] But this Court resolved the policy question when it adopted the court rules requiring that these rights be explained to the defendant on the record.[3] In addition, I am not convinced that the mere fact that an attorney made an appearance, or was appointed, will necessarily insure that the defendant will receive adequate advice. For example, the defendant in this case was represented by counsel, and yet the record reflects no indication that he was informed of even the basic right to trial, which was expressly required by the court

---

[2] See *People v Yost,* 433 Mich 133, 139-140; 445 NW2d 95 (1989), where we stated:

> As we [have] explained . . . , and as we have demonstrated through the development of the court rules, there is no federal constitutional requirement that *Boykin* [*v Alabama,* 395 US 238; 89 S Ct 1709; 23 L Ed 2d 274 (1969)]/*Jaworski* advice be given when misdemeanants plead guilty. It is a matter of policy for this Court.

[3] Even though the court rule as it existed at the time of this defendant's plea did not require explanation of all the *Jaworski* rights, it did require that the defendant be advised of his trial rights. The policy decision had then been made to require this advisement, and this should have been enforced at that time.

rule in effect at that time.[4] I fail to see any justification for elevating the rather mundane concepts of finality and administrative consequence over that of fair procedure. While finality is of course desirable, it is not imbued with any particular reverence, and, where a defendant had no incentive to appeal because he had been placed on probation, the record of his conviction should not be considered sacrosanct.[5] I would affirm the judg-

[4] The rule required that a defendant pleading guilty in district court be advised "that if his plea is accepted, he will not have a trial of any kind, so he gives up the rights he would have at a trial . . . ." See former DCR 785.4(e)(1). This rule was amended to require the Boykin/Jaworski rights in 1988. See former MCR 6.201(E)(3)(b)(i)-(iii), now MCR 6.610(E)(3)(b)(i)-(iii).

[5] I note further, as a general matter, that the majority, in its rhetorical obeisance to the icon of "finality," fundamentally confuses two different types of collateral challenge. The cases cited by the majority in support of its argument regarding the importance of "finality," see ante, p 294, ns 3-4, citing McCleskey v Zant, 499 US —; 111 S Ct 1454, 1468-1469; 113 L Ed 2d 517 (1991), Coleman v Thompson, 501 US —; 111 S Ct 2546, 2563-2565; 115 L Ed 2d 640 (1991), Murray v Carrier, 477 US 478, 487-492; 106 S Ct 2639; 91 L Ed 2d 397 (1986), Engle v Isaac, 456 US 107, 126-128; 102 S Ct 1558; 71 L Ed 2d 783 (1982), Wainwright v Sykes, 433 US 72, 88-89; 97 S Ct 2497; 53 L Ed 2d 594 (1977), Henderson v Kibbe, 431 US 145, 154, n 13; 97 S Ct 1730; 52 L Ed 2d 203 (1977), Stone v Powell, 428 US 465, 491 and n 31; 96 S Ct 3037; 49 L Ed 2d 1067 (1976), and United States v Timmreck, 441 US 780; 99 S Ct 2085; 60 L Ed 2d 634 (1979), all involved direct attacks on prior convictions in their own right. The attacks were styled "collateral" because they proceeded by habeas corpus or other means apart from direct appeal. None of those cases involved "collateral" attacks in the sense posed by the instant case— that is, involving the use of a prior conviction to enhance criminal culpability in a present, ongoing criminal proceeding.

This is a crucial distinction. The state's invocation of "finality" is greatly weakened when the state itself seeks to resurrect one or more prior convictions and put them to new use, to impose new and further adverse repercussions on the defendant. Indeed, this Court in Crawford distinguished the case of Timmreck, supra, by explicitly emphasizing this very distinction:

[T]he question here is not whether the conviction is subject to collateral attack as an alternative to direct appeal, the issue dealt with in Timmreck, but whether the defective conviction may be used in supplemental proceedings when the repercussions to the defendant of his failure to appeal may yet be felt. A defendant placed on probation might not appeal a defective

ment of the Court of Appeals on this issue.

The majority also completely evades a unique issue in this case. The circuit court denied the defendant's motion to withdraw his plea of guilty of OUIL, third offense, even though one of the convictions used to enhance was later set aside by the court that originally took the plea. At the time the plea was accepted, there were two valid prior convictions of record, but on August 8, several weeks before sentencing on November 27, the district court set one of these convictions aside. The defendant was convicted and sentenced under MCL 257.625(6); MSA 9.2325(6), which is implicated only when a defendant is convicted of driving a motor vehicle while under the influence of intoxicants within ten years of *two or more* prior convictions. The term "conviction" has been defined as:

> "[A] final judgment on a verdict or finding of guilty, a plea of guilty, or a plea of nolo contendere, and do[es] not include a final judgment which has been expunged by pardon, reversed, set aside, or otherwise rendered nugatory." [Black's Law Dictionary (5th ed), p 301, citing 18 USC 4251.]

After the 1982 conviction was set aside by the district court, an interesting question arose regarding whether the factual underpinning for a conviction and sentence for OUIL, third offense, still existed.[6] The statute specifically requires two prior

conviction. We are persuaded that a plea-based conviction, violative of *Boykin-Jaworski,* cannot be used to *supplement a charge in habitual offender proceedings.* [*Crawford,* 417 Mich 614, n 14. Emphasis added.]

[6] In *Lewis v United States,* 445 US 55; 100 S Ct 915; 63 L Ed 2d 198 (1980), the defendant was charged with possession of a firearm while being a convicted felon. The prior felony conviction in *Lewis* was subject to collateral attack in the state court but had not been

"convictions" as the linchpin of this offense.

The Court of Appeals did not reach this issue because it was remanding for entry of a conviction for the reduced charge of OUIL, second offense. Because this issue has not been addressed, I believe remand is appropriate.

---

vacated. The Court declared that it is a "common-sense notion" that after a conviction is vacated it can no longer serve as a factual predicate for a subsequent offense:

> One might argue, of course, that the language is so sweeping that it includes in its proscription [against possessing a firearm] even a person whose predicate conviction in the interim had been finally reversed on appeal and thus no longer was outstanding . . . though we have no need to pursue that extreme argument in this case, *we reject it. [Id.* at 61, n 5. Emphasis added.]