**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

FILED APRIL 9, 2002

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

No. 115184

ROBERT JAMES ROSEBERRY,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

TAYLOR, J.

Defendant pleaded guilty to OUIL-3d, as a third-felony habitual offender. After being sentenced on the OUIL-3d conviction, defendant moved to set aside the conviction on the ground that his two earlier OUIL convictions were invalid because he was not afforded counsel in connection with them. The circuit court denied the motion, and the Court of Appeals denied defendant's application for leave to appeal. We affirm, because such an untimely collateral attack on a prior conviction cannot provide a basis for relief.

I

Pursuant to a plea agreement and while represented by counsel, defendant pleaded guilty in the circuit court to the felony of operating under the influence of intoxicating liquor or a controlled substance, third offense, MCL 257.625(8)(c)[1], as well as being a third-felony habitual offender, MCL 769.11.[2] Thereafter, the circuit court sentenced defendant to 80 to 120 months (six years, eight months to ten years) of imprisonment on the OUIL-3d conviction (with the habitual third enhancement).

Defendant's conviction of OUIL-3d was predicated on two prior OUIL convictions. After sentencing in the present case, defendant, in a motion to vacate his OUIL-3d conviction and sentence, challenged for the first time the validity of his prior OUIL convictions on the basis of his claim that he was not properly afforded his right to counsel in connection with the prior convictions.[3] The circuit court denied the motion.

---

[1] Defendant admitted at the plea proceeding that he had been driving on U.S. 23 while he was "way over the legal limit of intoxication" from having consumed a large amount of beer and that his consumption of alcohol had affected him to the point that he could not properly drive a motor vehicle.

[2] Defendant also pleaded guilty to two misdemeanors that are immaterial for present purposes.

[3] An indigent defendant is constitutionally entitled to appointed counsel to defend against a misdemeanor charge if the defendant is "actually imprisoned" as a result of being

2

The Court of Appeals denied defendant's ensuing delayed application for leave to appeal. Unpublished order, entered June 9, 1999 (Docket No. 218032). We granted leave, limited to whether defendant's collateral challenge to his earlier OUIL convictions "was timely where it was not made until after he had pleaded guilty of OUIL, third offense." 463 Mich 976 (2001).

## II

### A

The present case presents a straightforward question of law, whether a defendant, after pleading guilty to a crime such as OUIL-3d that depends on the defendant having one or more prior convictions, may collaterally attack a prior conviction on the ground that it was improperly obtained because of a denial of the right to counsel. We hold that such an untimely collateral attack on a prior conviction should not be entertained by Michigan courts.

The present case involves a collateral, as opposed to a direct, attack on defendant's two prior OUIL convictions because the attack is being made in the present OUIL-3d case rather than having been made in a direct appeal from the prior convictions. *People v Ingram,* 439 Mich 288, 291 n 1; 484 NW2d 241 (1992) ("Collateral attacks encompass those challenges

_____

convicted of the charged misdemeanor. *People v Reichenbach,* 459 Mich 109, 120; 587 NW2d 1 (1998).

3

raised other than by initial appeal of the conviction in question").

In *People v Crawford,* 417 Mich 607; 339 NW2d 630 (1983), the defendant, under a plea bargain, pleaded nolo contendere to forgery and guilty to being an habitual second offender. On appeal, the defendant in *Crawford* argued that the plea bargain was illusory because the plea-based prior conviction under the habitual offender charge was subject to attack because it was obtained without the defendant being advised of two of the constitutional rights required by *People v Jaworski,* 387 Mich 21; 194 NW2d 868 (1972).[4] In affirming the defendant's guilty plea to being an habitual offender, the *Crawford* Court stated:

> A conviction defective under *Jaworski* can be challenged by a timely motion by the defendant to quash the supplemental information or to strike from the supplemental information the defective conviction. To be timely, such a motion must be made before a defendant's plea of guilty or nolo contendere is accepted. [*Id.* at 613-614.]

In light of the result in *Crawford* of affirming the

_____

[4] In *Jaworski,* this Court, applying *Boykin v Alabama,* 395 US 238; 89 S Ct 1709; 23 L Ed 2d 274 (1969), held that, in a plea proceeding conducted after the June 2, 1969 date of the *Boykin* opinion, a defendant must be informed by the trial court of and specifically waive (1) the right to trial by jury, (2) the right to confront one's accusers, and (3) the right against compelled self-incrimination. Accordingly, in *directly reviewing* the plea-based conviction in *Jaworski,* in which the trial court failed to inform the defendant of the right against compelled self-incrimination, *id.* at 26, this Court vacated the conviction and remanded the case for further proceedings. *Id.* at 33.

4

defendant's plea-based conviction, its actual holding is implicit in the second of these sentences. While the first sentence says collateral challenges are possible, the second gives the deadline for when they must be presented to be considered. Because the deadline was missed by the defendant in *Crawford,* that fact is dispositive of the case. Accordingly, the first sentence was mere dicta because the merits or nature of the collateral attack in *Crawford* were of no consequence to its resolution, given the untimeliness of the collateral attack in that case. Thus, the dissent is simply incorrect in asserting that the first sentence was "part of the resolution of the case." *Post,* p 8.

This Court also stated in *Crawford*:

> Crawford not having moved to set aside the prior conviction of which he now complains or to quash the supplemental information, and it not appearing that the prosecutor was on notice that the prior conviction may have been deficient or subject to challenge, Crawford cannot properly complain that he might not or would not have pled guilty or might have worked out a better plea bargain if the facts had been developed and his legal position had been sustained. [*Id*. At 613.]

While the dissent emphasizes the factual difference that *Crawford* did not involve a challenge to a prior conviction based on a violation of the right to counsel, the rationale of *Crawford* nevertheless applies with equal force to the present case. Because (1) defendant did not move in the trial court to set aside either of his prior OUIL convictions before

5

pleading guilty to OUIL-3d and (2) nothing in the record indicates that the prosecution in the present case should have been on notice of any alleged deficiency in the prior OUIL convictions, defendant was precluded from collaterally attacking the prior convictions after pleading guilty to the OUIL-3d charge.

B

Justice Brickley authored a concurrence in *Crawford* in which, joined by Justice Ryan, he expressed disagreement with the assertion in the *Crawford* majority's dicta that a conviction defective under *Jaworski* may be collaterally attacked by a timely motion during an habitual offender proceeding. *Crawford, supra* at 614-615. Rather, Justice Brickley would have resolved *Crawford* by holding that only guilty pleas taken in violation of the right to counsel articulated in *Gideon v Wainwright,* 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963), would be subject to collateral attack. *Crawford, supra* at 615. It follows that, under this view, *Jaworski* violations would only be subject to direct attack. Later, in *Ingram, supra* at 296-297, this Court adopted Justice Brickley's concurrence in *Crawford*. Therefore, after *Ingram,* only *Gideon* violations could support a collateral attack on a plea-based conviction. The remaining significance

6

of *Crawford,* after *Ingram,* was that *Crawford* had established a timeliness factor in bringing a collateral attack on a predicate conviction. We today make clear that any collateral challenge to a prior conviction must be brought in a timely fashion. Accordingly, to be understood is that the adoption by this Court in *Ingram* of Justice Brickley's concurrence in *Crawford* does not negate the actual holding of this Court in *Crawford* foreclosing an untimely collateral attack on a conviction. Rather, the holding of *Crawford* barring collateral attacks of whatever sort on a prior conviction that are not advanced until after a defendant tenders a plea in the present proceeding remains intact.

## III

Contrary to the apparent view of the dissent, the present case is distinguishable from *Burgett v Texas,* 389 US 109; 88 S Ct 258; 19 L Ed 2d 319 (1967), and *United States v Tucker,* 404 US 443; 92 S Ct 589; 30 L Ed 2d 592 (1972). In *Burgett,* the United States Supreme Court reversed a defendant's convictions following a jury trial on the basis of the use of prior convictions that were from all appearances obtained without the benefit of counsel in violation of *Gideon, supra.* In *Tucker,* the defendant was also convicted of a crime by a jury. *Id.* at 444-445. At sentencing, the federal district court expressly considered three prior felony convictions of

7

the defendant. The *Tucker* Court held that the defendant was entitled to resentencing because it subsequently was determined that the prior felony convictions were constitutionally invalid as they were obtained without the defendant having been provided the right to counsel as provided by *Gideon, supra. Tucker*, *supra* at 447.

In contrast to *Burgett* and *Tucker,* both of which involved a defendant convicted after a jury trial, defendant in the present case pleaded guilty to OUIL-3d and thereby acknowledged the validity of his prior OUIL convictions. It is this acknowledgment that distinguishes our case, where a plea of guilty sanitized any earlier collateral error, and *Burgett* and *Tucker* where no such acknowledgment took place. The watershed importance of a plea of guilty in criminal procedure law was made clear by the United States Supreme Court in *Tollett v Henderson,* 411 US 258, 267; 93 S Ct 1602; 36 L Ed 2d 235 (1973), where the Court held in the context of federal habeas corpus review of a state criminal conviction:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

The parties have not cited, and we have not discovered, any precedent from the United States Supreme Court that carves

8

out an exception to this broad principle for possible *Gideon* violations in connection with an antecedent conviction. Therefore, contrary to the implication of the dissent, a defendant does not have the unlimited right under controlling precedent to raise *at any time* a claim that a prior conviction is "void" under *Gideon.* Rather, the defendant is precluded from this if the time he chooses to raise his *Gideon* claim is after an intervening guilty plea to an offense such as OUIL-3d, which inherently includes an admission of the validity of the prior conviction. Accordingly, it is appropriate—and consistent with federal constitutional law as articulated by the United States Supreme Court—to preclude defendant in this case from collaterally attacking the prior OUIL convictions underlying his guilty plea to OUIL-3d on the basis of his claims of constitutional deprivations that occurred in connection with the prior convictions.

We believe that the dissent's reliance, *post* at 5, on *Menna v New York,* 423 US 61; 96 S Ct 241; 46 L Ed 2d 195 (1975), to effectively reject the applicability of *Tollett, supra,* is misplaced. In its brief per curiam opinion in *Menna,* the United States Supreme Court held that a guilty plea to a charge does not foreclose a claim that the charge is barred by the federal Double Jeopardy Clause. In this context, the Court included in a footnote the following

9

sentence which is relied on by the dissent:

> A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established. [*Menna, supra* at 62-63, n 2.]

This language, considered in context, refers to constitutional violations in a case in which the guilty plea at hand is taken, not to alleged constitutional violations related to prior convictions.[5] The point is that a double jeopardy challenge is not waived by a guilty plea because even the unquestionable establishment of factual guilt would not allow a conviction to be validly entered if the conviction would constitute a double jeopardy violation. Further, defendant's factual guilt in the present case was validly established by his guilty plea to OUIL-3d. Thus, our reliance on *Tollett* is in no way inconsistent with the language cited from *Menna*.[6]

---

[5] This is especially so because *Menna* did not involve a guilty plea to an "enhanced" crime such as OUIL-3d that depends on the existence of prior convictions. Thus, no issue involving the use or validity of an antecedent conviction was before the *Menna* Court.

[6] We also disagree with the dissent's effort to distinguish *Tollett* on the basis that it "involved a direct challenge to a plea" and "did not involve a collateral challenge." *Post* at 5. While defendant is advancing a collateral challenge to his prior OUIL convictions, he is doing so in an effort to directly challenge his plea to OUIL-3d in the present case. Accordingly, *Tollett* is on point in precluding defendant from raising claims of alleged constitutional violations that occurred before his guilty plea to OUIL-3d for the purpose of challenging his OUIL-3d conviction.

10

Further, after setting forth the above quotation from *Menna,* the dissent concludes:

> In this case, defendant's conviction of OUIL-3d depends on prior OUIL convictions, one or more of which were obtained in violation of the right to counsel. As further analysis reveals, no precedent exists that sustains the majority's implicit decision that defendant's factual guilt of his prior counselless convictions was validly established. [*Post* at 6.]

This confuses the issue that is properly before us because our concern is whether defendant's factual guilt *of OUIL-3d* was validly established in the present case, not whether his factual guilt of the antecedent OUIL convictions was validly established in prior proceedings. Defendant, with the assistance of counsel, pleaded guilty to OUIL-3d. This constituted a valid establishment of his factual guilt of OUIL-3d because, as stated in *Menna, supra* at 62-63, n 2, "a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case." Thus, the critical point is that, in pleading guilty to OUIL-3d (with the assistance of counsel), defendant acknowledged his prior OUIL convictions. Accordingly, there is simply no occasion for us to independently examine, as the dissent would do, whether defendant's factual guilt was validly established in the proceedings that resulted in those prior convictions.

11

## IV

Defendant's argument that his two prior OUIL convictions should be treated as invalid because he was not properly afforded his right to counsel in connection with those convictions comes too late. A collateral attack on a prior conviction underlying a present charge may not be made after a defendant's plea of guilty to the present charge is accepted. Thus, we affirm the judgment of the circuit court.

CORRIGAN, C.J., and CAVANAGH, WEAVER, YOUNG, and MARKMAN, JJ., concurred with TAYLOR, J.

## STATE OF MICHIGAN

### SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                    No. 115184

ROBERT ROSEBERRY,

    Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

Defendant Roseberry's conviction for the felony OUIL-3d is based on two earlier convictions for OUIL. In at least one of them, defendant did not have counsel and did not validly waive his right to counsel. To allow his conviction for OUIL-3d to stand is to deny him a basic constitutional right that legal precedent guarantees him. The majority's circumvention of it is tenuously based and troubling. The conviction should be reversed.

### The Right to Counsel

The Sixth Amendment right to counsel is unique in both its importance and the protections afforded to it. *People v*

*Carpentier,* 446 Mich 19, 29; 521 NW2d 195 (1994); see also *Custis v United States,* 511 US 485; 114 S Ct 1732; 128 L Ed 2d 517 (1994). For example, the United States Supreme Court has limited the instances in which a judge may consider convictions obtained in violation of this right.

In analyzing whether constitutionally infirm prior convictions may be used to impeach a criminal defendant at trial, the Court has noted that

> [t]he starting point in considering this question is, of course, *Gideon v Wainwright*, 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 [1963]. In that case the Court unanimously announced a clear and simple constitutional rule: In the absence of waiver, a felony conviction is invalid if it was obtained in a court that denied the defendant the help of a lawyer.[1] [*Loper v Beto*, 405 US 473, 481; 92 S Ct 1014; 31 L Ed 2d 374 (1972).]

The Court has held that a conviction obtained in violation of a defendant's right to counsel is void. *Burgett v Texas,* 389 US 109, 114; 88 S Ct 258; 19 L Ed 2d 319 (1967). Such a conviction cannot be rendered valid by failure of the person convicted to attack it on direct review. Life is not breathed into it when, as here, a defendant pleads guilty to a charge based on it. It is not voidable; it is void. The underlying error of the majority is in assuming the contrary. As *Burgett* explains:

---

[1] This rule applies to misdemeanor convictions that result in actual imprisonment. *Nichols v United States*, 511 US 738, 749; 114 S Ct 1921; 128 L Ed 2d 745 (1994).

> To permit a conviction obtained in violation of *Gideon v Wainwright* to be used against a person either to support guilt or enhance punishment for another offense is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right. [*Id.* at 115 (internal citation omitted).]

*Burgett* clearly prohibits using a conviction obtained in violation of a defendant's Sixth Amendment right to counsel to support another conviction.

### *United States v Tucker*

The United States Supreme Court relied on *Burgett* in *United States v Tucker,* 404 US 443; 92 S Ct 589; 30 L Ed 2d 592 (1972). *Tucker* held that a judge may not consider convictions obtained in violation of *Gideon* when sentencing a defendant for a later offense. At the time of sentencing, the defendant in *Tucker* had not claimed that his earlier convictions were constitutionally infirm. Instead, he challenged the earlier convictions in a collateral proceeding several years later. *Id.* at 445.

This precedent undercuts the majority's conclusion here that defendants may not challenge the validity of convictions that are used as a basis for later convictions unless they do so "timely." The majority undertakes to distinguish *Burgett* and *Tucker* on the facts. But the factual differences do not render their holdings inapplicable to this case.

3

The majority misapprehends my reasoning. I do not contend that the current case is indistinguishable from *Burgett* and *Tucker*. The fact of defendant's prior guilty pleas differentiates it from them. However, the majority is incorrect in concluding that this factual distinction is so significant that it prevails over constitutional principles.

Nor can I agree that defendant's acknowledgment that he had twice before been convicted of OUIL was an acknowledgment that these counselless convictions were constitutionally valid. The transcript of the plea proceedings reveals that defendant admitted two convictions of similar offenses in 1994 and 1996. He was not asked about and he did not admit his guilt of those offenses. There was no attempt to determine if he had counsel in 1994 and in 1996 or had waived the right to counsel. Instead, like the defendant in *Tucker,* defendant merely acknowledged the fact of the prior convictions. To characterize this as somehow correcting the underlying constitutional error ignores the significance of the right to counsel and contradicts federal precedent establishing that right.

### *Tollett v Henderson*

The majority's reliance on *Tollett v Henderson*[2] to fortify its position is misplaced. *Tollett,* which held that

---

[2]411 US 258; 93 S Ct 1602; 36 L Ed 2d 235 (1973).

a defendant may not assert a constitutional error that occurred before his counseled guilty plea, involved a direct challenge to a plea. It did not involve a collateral challenge. More importantly, its discussion of the significance of guilty pleas is unmistakedly limited to pleas entered with the advice of counsel. *Tollett* does not stand for the proposition that a guilty plea waives a challenge to the validity of an earlier conviction when the challenge is based on denial of the right to counsel. See *Menna v New York*, 423 US 61, 62-63, n 2; 96 S Ct 241; 46 L Ed 2d 195 (1975).

Here the conviction was based in part on a void conviction or convictions. *Tollett* does not address that situation. It certainly does not hold that a void conviction can be resuscitated by a counseled guilty plea in a later case.

As we discussed in *People v New*,[3] the United States Supreme Court clarified the holding of *Tollett,* saying that a counseled guilty plea

> "renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of guilt and which do not stand in the way of conviction, if *factual guilt is validly established*." [*New, supra* at 488, quoting *Menna, supra* (emphasis added).]

---

[3]427 Mich 482; 398 NW2d 358 (1986).

5

In this case, defendant's conviction of OUIL-3d depends on prior OUIL convictions, one or more of which were obtained in violation of the right to counsel. As further analysis reveals, no precedent exists that sustains the majority's implicit decision that defendant's factual guilt of his prior counselless convictions was validly established. *Tollett* does not extend to collateral challenges of underlying void convictions and is inapplicable.

### *People v Crawford*

The majority justifies its disposition by relying on this Court's decision in *People v Crawford,* 417 Mich 607; 339 NW2d 630 (1983). However, it misquotes and misapplies that decision. There, the defendant moved to set aside his guilty plea. He asserted that he had not been advised of his rights to confront his accusers and not to be compelled to incriminate himself.[4] This Court held that a

> conviction defective under *Jaworski* can be challenged by a timely motion by the defendant to quash the supplemental information or to strike from the supplemental information the defective conviction. To be timely, such a motion must be made before a defendant's plea of guilty or nolo

---

[4]These rights are known as *Boykin-Jaworski* rights. *Boykin v Alabama*, 395 US 238; 89 S Ct 1709; 23 L Ed 2d 274 (1969); *People v Jaworski*, 387 Mich 21; 194 NW2d 868 (1972). *Boykin* and *Jaworski* held that a defendant entering a guilty plea must be advised by the trial judge of (1) the privilege against self incrimination, (2) the right to trial by jury, and (3) the right to confront one's accusers. The record must show that the defendant was so informed.

6

contendere is accepted. [*Id.* at 613-614.]

*Crawford* did not hold that collateral attacks on convictions obtained in violation of Sixth Amendment rights are foreclosed if not raised before a plea of guilty on a subsequent conviction. *Crawford* involved *Jaworski* rights. It held that challenges to convictions obtained in violation of those rights must be raised before a plea of guilty to a later offense is accepted.

Contrary to the majority's interpretation, *Crawford* drew a careful distinction between convictions obtained in violation of a defendant's right to counsel and other defects in guilty plea proceedings. It made a narrow ruling that explicitly noted limits on the use of convictions obtained without the advice of counsel, citing *Burgett* and *Tucker*. *Id.* at 614, n 14. The majority misses the distinction.

The majority dismisses *Crawford*'s reference to *Jaworski* rights as dicta. But on closer examination, it becomes apparent that the holding cannot accurately be read to include Sixth Amendment violations. The Court of Appeals ruling in the case affirmed Crawford's plea. It rejected his claim that the underlying guilty plea was defective because Crawford had not been advised of his rights to confront witnesses and avoid self-incrimination. Significantly, the Court of Appeals stated that "only those prior guilty-plea convictions where

7

the defendant was not represented by counsel should be excised from one's prior conviction record for purposes of the habitual offender statute."  See *id.* at 611.

Rather than affirming because no right exists to collaterally challenge the plea, *Crawford* expressly acknowledged the viability of a timely collateral challenge to pleas obtained in violation of *Jaworski* rights.  It then concluded that "such a motion" was timely if made before the trial court accepted the plea.  *Id.* at 613-614.  This conclusion is relevant only if a collateral challenge can be made.  Reading these sentences in context, it becomes clear that the first, which regards challenges to defective convictions under *Jaworski,* is part of the resolution of the case.

This conclusion is supported by Justice Brickley's accompanying opinion in which he stated:

> I concur in the result of the majority opinion, but cannot concur in the assertion that a conviction, although defective under *Boykin v Alabama* and *People v Jaworski,* but never directly attacked, may be challenged by a timely motion during an habitual offender proceeding.  I would hold that only those guilty pleas taken in violation of *Gideon v Wainwright* are subject to collateral attack in later habitual offender proceedings.  [*Id.* at 614-615 (internal citations omitted).]

Reading the sentences regarding *Jaworski* rights and timeliness in the context of this concurrence confirms that

8

the language regarding challenging *Jaworski* violations was an integral limitation built into *Crawford*. Thus, I cannot agree that *Crawford*'s holding is so broad as to apply to all collateral challenges. Instead, given the importance of the right to counsel, considerations of timeliness must yield when a conviction has been obtained in violation of that fundamental safeguard.

## Conclusion

Given the clarity and simplicity of the constitutional rule involved in this case, the majority should not be shy about applying it. The majority has found no United States Supreme Court opinion that qualifies or diminishes the Court's holding in *Gideon.* The instant case should not be used to plant precedent in Michigan law that may later be cited to justify watering down the constitutional rule enunciated by *Gideon*, reaffirmed by *Burgett, Loper,* and *Tucker*, among others, and adopted by this Court in *People v Moore*, 391 Mich 426; 216 NW2d 770 (1974).

In deciding the matter before us, the majority carves serious inroads into the Sixth Amendment constitutional right to counsel in Michigan. It relies erroneously on *Crawford* to circumvent the well-established principle that convictions obtained where a defendant was without counsel and did not waive his right to counsel are void. Yet, as demonstrated

9

above, *Crawford* does not apply to convictions obtained in violation of the Sixth Amendment.

I would remand this case to the trial court with instructions to reverse defendant's conviction. Because at least one of his two earlier OUIL convictions is constitutionally infirm, hence void, he cannot be convicted of OUIL-3d.