# Order

**Michigan Supreme Court**
**Lansing, Michigan**

April 6, 2018

155152

*In re* HILL, Minors.

Stephen J. Markman,
Chief Justice

Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement,
Justices

SC: 155152
COA: 332923
Alger CC Family Division:
2013-004455-NA

_____/

On November 8, 2017, the Court heard oral argument on the application for leave to appeal the December 27, 2016 judgment of the Court of Appeals. On order of the Court, the application is again considered, and it is DENIED, there being no majority in favor of granting leave to appeal or taking other action.

MCCORMACK, J., (*dissenting*).

I respectfully dissent from this Court's order denying leave to appeal. I would grant leave and overrule *In re Hatcher*, 443 Mich 426 (1993), or in the alternative, hold that the collateral bar rule must give way to due process.

The respondent-mother's children were removed in May 2013 by the Department of Health and Human Services (DHHS) and an initial disposition hearing was held in August, at which the respondent admitted several allegations and pleaded no contest to several others. The parties do not dispute that her plea was defective, as the trial court did not inform her of her rights as required by MCR 3.971(B): the respondent was not told she was giving up the right to conduct a trial, force the DHHS to prove its allegations, confront witnesses against her, and compel attendance of favorable witnesses. Nor—importantly here—was she told that her plea could be used against her in a later proceeding to terminate her parental rights. As a result of the defective plea, the court took jurisdiction over her children and adopted the DHHS's recommended service plan. Over the next two and a half years, the court held a series of review hearings to assess the respondent's progress. In 2016, DHHS sought to terminate the respondent's rights and the court did so.

The respondent appealed. She argued that because her plea was defective, the court lacked jurisdiction to terminate her parental rights. The Court of Appeals affirmed, holding that she was precluded from complaining about her plea by the collateral bar rule, citing *Hatcher*. *In re Hill, Minors*, unpublished per curiam opinion of the Court of Appeals, issued December 27, 2016 (Docket No. 332923). We ordered arguments on the application and asked the parties to address whether *Hatcher* correctly held that the collateral bar rule could prevent a parent from challenging the court's initial exercise of jurisdiction after the court terminated her parental rights, if not what standard courts should apply in this context, and whether *Hatcher* was correctly decided. I would answer those questions now.

A child protective action is started by a petition alleging parental abuse or neglect, and then proceeds in two phases: adjudication and disposition. *In re Sanders*, 495 Mich 394, 404 (2014), citing *In re Brock*, 442 Mich 101, 108 (1993). At the adjudicative phase, a parent can either enter a plea to the allegations in the petition, MCR 3.971, or demand a trial, MCR 3.972. If the court finds the allegations proven, whether by plea or trial, it assumes jurisdiction over the child. *Sanders*, 495 Mich at 405. "Once the court has jurisdiction, it determines during the dispositional phase what course of action will ensure the child's safety and well-being." *Id.* at 404; see also MCR 3.973.

During the dispositional phase the court monitors and assesses a parent's progress under the DHHS case service plan in review hearings. MCR 3.975. If the parent cannot make progress under the plan, DHHS may seek to terminate his or her parental rights. At the end of the process, the court may decide to reunify the family or terminate the parent's rights. MCR 3.976; MCR 3.977(H). It is then that the proceeding is completed.

The collateral bar rule requires a litigant to challenge a trial court's erroneous decision in a direct appeal of that decision and forbids an attack in a different (collateral) proceeding.[1] *Hatcher* first applied the collateral bar rule to child-protective proceedings but its application was novel. *Hatcher* effectively held that a child-protective action is really multiple actions with multiple final orders, each of which must be appealed immediately and separately. This view of a child-protective action misunderstands the processes and rules that govern it, and disserves children and families by that misunderstanding.

---

[1] This rule is longstanding and common across legal disciplines. See e.g. *People v Ingram*, 439 Mich 288, 291 n 1 (1992) ("Collateral attacks encompass those challenges raised other than by initial appeal of the conviction in question."); *People v Howard*, 212 Mich App 366, 369 (1995) ("[A] challenge brought in any subsequent proceeding or action is a collateral attack."); *Workers' Compensation Agency Dir v MacDonald's Indus Prod, Inc (On Reconsideration)*, 305 Mich App 460, 474 (2014) (describing a collateral attack as using "a second proceeding to attack a tribunal's decision in a previous proceeding").

*Hatcher*'s rule is that a parent who appeals a defect in the adjudicative phase at the end of the proceeding is "collaterally" attacking that very same proceeding. But as then Justice CORRIGAN has explained, "[a] child protective action is 'a single continuous proceeding.' " *In re Hudson*, 483 Mich 928, 935 (2009) (CORRIGAN, J., concurring), quoting *In re LaFlure*, 48 Mich App 377, 391 (1973). Each proceeding starts with the filing of a petition, and ends with a determination of whether a parent's rights will be terminated.

This understanding is reinforced by our Court Rules. To the extent that MCR 3.993 can be read as permitting a parent to appeal a nonfinal order at the adjudication phase, there is no rule requiring that a parent be advised of that fact, much less any rule advising that if the parent does not appeal they will be barred from doing so at the end of the proceeding. Nor is there a rule requiring appointment of counsel to pursue such an appeal, as there is when a parent's rights are terminated. MCR 3.977(J). As a result, *Hatcher*'s *requirement* that a parent appeal immediately after a court issues a nonfinal order in the adjudication phase is not made plain to a parent until it is too late.

These important differences set *Hatcher* apart from the precedent on which it relied. The *Hatcher* opinion cited *Jackson City Bank & Trust Co v Fredrick*, 271 Mich 538 (1935), to justify applying the collateral bar rule within a child protective action. But *Jackson City Bank* presented a typical collateral bar question—a party challenging a final judgment from a previous case in a subsequent and separate case. In that case, the parties were granted a judgment of divorce and did not contest or appeal it. *Id*. at 545. In a new lawsuit, the plaintiffs—who were not parties to the divorce proceeding but the heirs of the wife's second husband—sought to challenge the validity of the divorce, and the Court barred their claims. *Id*. at 546. The same setup—a party using a subsequent lawsuit to attack a prior judgment—underlies the other cases cited in *Hatcher*. See *Life Ins Co of Detroit v Burton*, 306 Mich 81, 84-85 (1943) (defendant filed to set aside a sheriff's levy and sale several months after it occurred, claiming the court lacked jurisdiction); *Edwards v Meinberg*, 334 Mich 355 (1952) (defendant lost a jury trial and then attacked the court's jurisdiction in a separate and subsequent proceeding).

Given the inapt application of the collateral bar rule to the direct appeal of a single child-protective proceeding, not surprisingly, we have already carved out many exceptions to the *Hatcher* rule. See, e.g., *Sanders*, 495 Mich 394 (reversing a termination in which one parent was improperly adjudicated as unfit and holding the one-parent doctrine unconstitutional); *In re Mays*, 490 Mich 993 (2012) (reversing a termination after the trial court made an erroneous factual finding during the adjudication phase); *In re Mason*, 486 Mich 142 (2010) (reversing a termination for failure to facilitate the parent's involvement during the adjudication and dispositional phases); *In re Hudson*, 483 Mich 928 (2009) (remanding where the trial court failed to advise the respondent that her plea could be used in a proceeding to terminate her parental rights); *In re Mitchell*,

485 Mich 922 (2009) (same).  Cf. *In re Rood*, 483 Mich 73, 111 (2009) (opinion by CORRIGAN, J.) (reversing a termination order because the trial court did not provide parent with proper notice of dispositional hearings).  In each of these cases we did not view *Hatcher* as an impediment to each parent's challenge to an error from the adjudication phase *after* termination.  And we have recently summarily reversed parental termination orders on due process grounds despite *Hatcher*.  See, e.g., *In re Jones*, 499 Mich 862 (2016) (reversing a parental termination order after the Court of Appeals held the respondent's claims were barred by *Hatcher*); *In re Wangler*, 498 Mich 911 (2015) (same). With all of these carve-outs, it is hard to say what is left of the *Hatcher* rule.

Which makes sense, given the *Hatcher* rule's flimsy foundation; an intraproceeding collateral bar rule will be no match for the constitutional concerns at issue when a court terminates a parent's rights.  The rule also undermines the first principle of the juvenile code, MCL 712A.1 *et seq.* to support children in their own homes.  See MCL 712A.1(3) ("This chapter shall be literally construed so that each juvenile coming within the court's jurisdiction receives the care, guidance, and control, preferably in his or her own home, conducive to the juvenile's welfare and the best interest of the state.").  Achieving finality for children in child-protective proceedings as soon as possible is a critical goal too.  But the *Hatcher* rule disserves even that goal.  Incentivizing parents to file interlocutory appeals for fear of waiving an issue instead of promoting a parent's timely cooperation with DHHS will only make coming to a final determination in a proceeding a longer process.

A parent's right to raise his or her children is ancient, profound, and firmly established in our jurisprudence.  "The right to parent one's children is essential to the orderly pursuit of happiness by free men and is perhaps the oldest of the fundamental liberty interests[.]"  *Sanders*, 495 Mich at 409, quoting *Meyer v Nebraska*, 262 US 390, 399-400 (1923) and *Troxel v Granville*, 530 US 57, 65 (2000) (cleaned up).  And the right "does not evaporate simply because" one has not been a model parent.  *Santosky v Kramer*, 455 US 745, 753 (1982).  As a result, the termination of the right is "unique in the kind, the degree, and the severity of the deprivation [it] inflict[s]."  *In re Sanchez*, 422 Mich 758, 765 (1985) (quotation marks and citation omitted).  And robust protection of parental rights furthers the best interests of children, because "[w]hen a child is parented by a fit parent, the state's interest in the child's welfare is perfectly aligned with the parent's liberty interest."  *Sanders*, 495 Mich at 416.  A court-fashioned rule that prevents a parent from having a court consider a meritorious claim of a defect in the governmental process that permanently separates a parent from a child is one we should disavow affirmatively, rather than whittle away one case at a time.

For all of these reasons, I believe *Hatcher* was wrongly decided and I would say so here.  But short of that, I would hold that the *Hatcher* rule must yield to due process here, as we have held that it does in so many similar contexts.  See *Sanders*, 495 Mich 394; *Hudson*, 483 Mich 928; *Mitchell*, 485 Mich 922.

VIVIANO and BERNSTEIN, JJ., join the statement of McCORMACK, J.

CLEMENT, J., did not participate in the disposition of this matter because the Court considered it before she assumed office.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

April 6, 2018



Clerk

p0404