# Order

**Michigan Supreme Court**
**Lansing, Michigan**

Bridget M. McCormack,
Chief Justice

Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch,
Justices

August 27, 2021

161118-9

*In re* GUARDIANSHIP OF ORTA, Minors.
_____

MARIA ORTA,
          Petitioner-Appellee,

v

                                      SC: 161118-9
                                      COA: 346399; 346400
                                      Delta PC:  15-021724-GM

LISA KEENEY, Guardian,
          Respondent-Appellant.                                  15-021725-GM

_____/

On April 8, 2021, the Court heard oral argument on the application for leave to appeal the February 4, 2020 judgment of the Court of Appeals. On order of the Court, the application is again considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

CAVANAGH, J. (*concurring*).

Although I concur with this Court's denial order, I write separately because this case illustrates problems that may arise because this state does not afford parents the right, statutory or otherwise, to the assistance of counsel at guardianship proceedings.

Petitioner-mother was financially struggling while caring for her two young children. Her mother, respondent-grandmother, agreed to care for the children for one month while petitioner worked on improving her situation. Petitioner drove the children to respondent's home in Michigan's Upper Peninsula in June 2015, leaving a signed note purporting to provide respondent with permission to consent to medical treatment for the children.[1] After one month, the parties mutually agreed to extend the children's stay while petitioner obtained an apartment and continued to work toward financial stability. Shortly after Labor Day, unbeknownst to petitioner, respondent filed a temporary guardianship petition, which the trial court granted that same day. Respondent's attorney

_____

[1] I express no opinion on whether this signed note constituted appropriate legal authority for the children's care and maintenance as contemplated by MCL 700.5204(2)(b).

attempted to serve petitioner with notice of the temporary guardianship, her ability to object, and notice of the hearing for full guardianship, but that notice was apparently never received because it was mailed to an incorrect address. According to petitioner, she did not receive actual notice until the beginning of October. In spite of that, she was able to appear at the guardianship hearing on October 15, 2015, albeit without an attorney. At the hearing, she testified about the temporary nature of the arrangement with respondent and represented that she had recently signed a lease for a two-bedroom apartment and held stable employment. Nonetheless, the trial court granted respondent's guardianship petition under MCL 700.5204(2)(b), which provides that a court may appoint a guardian where "[t]he parent or parents permit the minor to reside with another person and do not provide the other person with legal authority for the minor's care and maintenance, and the minor is not residing with his or her parent or parents when the petition is filed." Petitioner did not appeal.

As the Court of Appeals panel eventually concluded, the trial court clearly erred when it granted respondent's guardianship petition. The word "reside" in MCL 700.5204(2)(b) requires not only a child's physical presence with someone other than the parent, but an accompanying intent element from the parent of choosing that place as the child's permanent residence. *In re Orta, Minors*, unpublished per curiam opinion of the Court of Appeals, issued February 4, 2020 (Docket Nos. 346399 and 346400). There was no dispute at the initial guardianship hearing in regard to the fact that both petitioner and respondent agreed on a temporary arrangement for the children that was initially expected to last one month, but was later extended, again temporarily, until petitioner could move into a new apartment. Because a statutory requirement was lacking—petitioner did not intend or permit the children to remain with respondent permanently—the trial court erred by appointing respondent as the children's guardian.

This guardianship should not have been entered in the first place. But petitioner, as a pro se litigant, was seemingly unaware that she had a winning issue on appeal. In fact, there is no indication in the record that petitioner was even informed by the trial court that she could appeal the initial guardianship decision. A little over a year later, petitioner attempted to have the guardianship terminated, again without an attorney. This proved unsuccessful, and again petitioner did not attempt to appeal the trial court's denial order. Petitioner was finally able to retain a lawyer to assist her in filing a petition to terminate the guardianship in July 2018—nearly three years after the trial court erroneously granted respondent's guardianship petition. The trial court denied this second petition to terminate the guardianship, but this time with the continued assistance of counsel petitioner did file an appeal. In February 2020, almost five years after the "temporary" living arrangement began, the Court of Appeals recognized the trial court's original error, vacated the guardianship orders, and returned the children to petitioner.

What transpired in this case is troubling. Fit parents have the fundamental constitutional right "to make decisions concerning the care, custody, and control of their

children." *In re Sanders*, 495 Mich 394, 409 (2014). This right is an element of liberty protected by due process. *Id.* In my view, this interest can be infringed whenever a child is removed from a parent's care, regardless of whether the child is removed pursuant to a neglect or abuse proceeding instituted by the state or via placement with a private guardian with the state's approval. As the Massachusetts Supreme Judicial Court has reasoned:

> The interest of parents in their relationship with their children has been deemed fundamental, and is constitutionally protected. . . .
>
> These interests are no less compelling for a parent whose child is the subject of a guardianship proceeding. The guardian, once appointed, assumes significant rights and responsibilities during the period of guardianship that otherwise would have resided with the parent. . . . The guardian's rights and responsibilities to ensure the child's welfare effectively displace those of the parent. The guardian, and not the parent, becomes the primary caretaker and decision maker for the child. Even if the guardianship lasts for only a brief period of time, the displacement impacts the parent's liberty interests. [*In re Guardianship of VV*, 470 Mass 590, 592 (2015) (quotation marks and citations omitted).]

And, while the rights of a parent whose child is placed in a guardianship are generally not forever terminated, the failure to adhere to a court-structured guardianship plan can segue into a termination of parental rights, MCL 712A.19b(3)(e), at which point the lack of attorney assistance at the guardianship stage may be impossible to untangle. See, e.g., *In re McLaughlin*, unpublished per curiam opinion of the Court of Appeals, issued March 21, 2017 (Docket No. 332170).

Despite a guardianship's intrusion into a parent's fundamental rights, in this state parents are not entitled to the assistance of counsel while navigating a guardianship proceeding. This is understandable to a degree, as there remain legal uncertainties and a lack of uniformity regarding the foundation of the right to counsel in *termination* proceedings.[2] Even with the total loss of a fundamental right at stake, the United States Supreme Court has held that due process does not necessarily require the appointment of counsel in every termination proceeding. *Lassiter v Dep't of Social Servs*, 452 US 18, 21 (1981). Nonetheless, the Supreme Court recognized that "[i]nformed opinion has clearly come to hold that an indigent parent is entitled to the assistance of appointed counsel not only in parental termination proceedings, but in dependency and neglect proceedings as well." *Id.* at 33-34, citing IJA-ABA Standards for Juvenile Justice, Counsel for Private Parties, Standard 2.3(b) (1980); Uniform Juvenile Court Act, § 26(a), 9A ULA 35 (1979);

---

[2] See generally Sankaren, *Moving Beyond* Lassiter: *The Need for a Federal Statutory Right to Counsel for Parents in Child Welfare Cases*, 44 J Legis 1 (2017).

National Council on Crime and Delinquency, Model Rules for Juvenile Courts, Rule 39 (1969); United States Department of Health, Education, and Welfare (HEW), Children's Bureau, Legislative Guide for Drafting Family and Juvenile Court Acts, § 25(b) (1969); HEW, Children's Bureau, Legislative Guides for the Termination of Parental Rights and Responsibilities and the Adoption of Children, Part II, § 8 (1961); and National Council on Crime and Delinquency, Standard Juvenile Court Act, § 19 (1959). In that spirit, at least 10 states have provided for a right to counsel in a termination proceeding under their respective state constitutions.[3] While this Court has yet to address the issue, our Court of Appeals has held that parents have a constitutional right to counsel at a termination proceeding. See *In re Williams*, 286 Mich App 253, 275 (2009); *In re Powers, Minors*, 244 Mich App 111, 121 (2000); *In re Cobb*, 130 Mich App 598 (1983). Moreover, a parent's right to the assistance of counsel at a child protective proceeding, including a termination hearing, is codified by both statute and court rule in this state. MCL 712A.17c(4); MCR 3.915(B). This Court, therefore, has not addressed whether Michigan's Due Process Clause, Const 1963, art 1, § 17, supports a constitutional entitlement to the assistance of counsel at a termination proceeding.[4] Without a recognized constitutional right to counsel at a termination proceeding, the foundation for a parent's right to counsel in a guardianship proceeding where the deprivation is generally less permanent remains largely unexplored and unresolved.

In sum, unlike a parent in a child protective proceeding or a termination of parental rights case, a Michigan parent in a guardianship proceeding has no right to the assistance of counsel by virtue of a statute or court rule. Nor do they have a recognized constitutional right to such assistance. Of course, not all parents may want or need the assistance of counsel at a guardianship proceeding—many guardianships are entered into with the consent of a parent who is unwilling or unable to care for their child and where the assistance of an attorney is not necessarily needed. However, this case illustrates an instance in which a guardianship was imposed against a parent's will, in violation of the governing statute, and, in my view, in violation of a fundamental right. At minimum, I believe the assistance of a court-appointed attorney in a contested guardianship case is necessary to safeguard parental rights and ensure that a guardianship is entered using only fundamentally fair procedures. In this case, for example, a court-appointed attorney may have been able to recognize the trial court's initial errors and lodge a successful objection or counsel petitioner-mother about her right to appeal the guardianship order.

---

[3] See Pollock, *The Case Against Case-by-Case: Courts Identifying Categorical Rights to Counsel in Basic Human Needs Civil Cases*, 61 Drake L Rev 763, 782-783 & n 77 (2013) (collecting cases from Alabama, Florida, Massachusetts, Montana, New Jersey, New York, Ohio, Oklahoma, Washington, and West Virginia).

[4] "[T]here exists a general presumption by this Court that we will not reach constitutional issues that are not necessary to resolve a case." *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234 (1993).

Perhaps, in that hypothetical scenario, petitioner-mother would not have been deprived of the care, custody, and companionship of her children for almost five years.

However, petitioner-mother does not argue that appointment of counsel in a contested guardianship case is required by the Due Process Clause of our state Constitution. Const 1963, art 1, § 17. Therefore, that question must be left for another day. In the interim I urge our Legislature to consider enacting a statutory right to court-appointed counsel for parents in guardianship proceedings as it has provided for parents in termination proceedings. See MCL 712A.17c(4).

CLEMENT and WELCH, JJ., join the statement of CAVANAGH, J.

VIVIANO, J. (*dissenting*).

We heard arguments in this case to decide whether petitioner's most recent petition to terminate the guardianship of her children was an impermissible collateral attack on the initial decision imposing the guardianship and whether, as a condition for granting a guardianship, MCL 700.5204(2)(b) requires that the parent intend that child *permanently* reside with another person. Because I question whether the Court of Appeals reached the correct result in this case and because the interesting and jurisprudentially significant issues it presents have not been fully developed, I would grant leave to further consider them.

In *In re Ferranti*, 504 Mich 1, 22 (2019), we explained that the "collateral bar" rule "generally prohibits a litigant from indirectly attacking a prior judgment in a later, *separate* action . . . ." See also *id.* at 23 ("The [collateral-bar] rule bars a litigant from challenging a ruling or judgment in a later and separate case."). Although we emphasized that the rule applies to challenges made in a later *case*, we have elsewhere explained that "[c]ollateral attacks encompass those challenges raised other than by initial appeal . . . ." *People v Ingram*, 439 Mich 288, 291 n 1 (1992).[5] In *Ferranti*, we concluded that a child-

---

[5] See also *In re Hill*, 501 Mich 1047, 1048 (2018) (MCCORMACK, J., dissenting) ("The collateral bar rule requires a litigant to challenge a trial court's erroneous decision in a direct appeal of that decision and forbids an attack in a different (collateral) proceeding."), citing, *inter alia*, *People v Howard*, 212 Mich App 366, 369 (1995) ("[A] challenge brought in any subsequent proceeding or action is a collateral attack."); 1 Black, *A Treatise on the Law of Judgments Including the Doctrine of Res Judicata* (1902), § 252, pp 375-376 ("[T]he word 'collateral' is always used as the antithesis of 'direct,' and it is therefore wide enough to embrace any independent proceeding. To constitute a direct attack upon a judgment, it is said, it is necessary that a proceeding be instituted for that very purpose . . . . But if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, then the attack upon the

protective action was a single proceeding, even though it consisted of two phases; consequently, a parent who waited until the end of the second phase to appeal the court's decision at the first phase was not collaterally attacking that first decision. *Ferranti*, 504 Mich at 35. The underlying rationale, explained elsewhere, was that the child-protective action was " 'a single continuous proceeding,' . . . start[ing] with the filing of a petition, and end[ing] with a determination of whether a parent's rights will be terminated." *In re Hill*, 501 Mich 1047, 1049 (2018) (MCCORMACK, J., dissenting) (quotation marks and citations omitted). Thus, we held that that the collateral-bar rule did not apply in those circumstances.

Our order granting oral argument in the present case asked the parties to discuss whether *Ferranti* "applies to guardianship proceedings[.]" *In re Guardianship of Orta*, 505 Mich 1137, 1137 (2020). But our order was imprecise because *Ferranti* did not state a new rule. Instead, it analyzed whether the collateral-bar rule applied in the particular circumstances of that case. Thus, a better-stated question in this case is simply whether petitioner's request to terminate the guardianship here constituted an impermissible collateral attack on the initial decision imposing the guardianship. And, in answering this question, we should consider whether the reasoning in *Ferranti* (or any of our other precedents) has any bearing on the analysis in this case.

An argument could be made that petitioner's challenge here came in a proceeding different from the initial guardianship determination and thus was a collateral attack. As a general matter, guardianships of minors proceed in a different manner than the child-protective actions at issue in *Ferranti*. As noted above, the latter actions commence with a petition and must end with a final determination of the parent's rights. *Hill*, 501 Mich at 1049. There is no such natural arc to guardianship proceedings: once a guardianship is established, there is no mechanism that will necessarily end the proceeding via a decision of the probate court, let alone within a confined period. Under MCL 700.5204(1), an individual "interested in the welfare of a minor, or a minor if 14 years of age or older, may petition for the appointment of a guardian for the minor." The probate court may then appoint a guardian if certain conditions are met. MCL 700.5204(2). One such condition—the one invoked here—is that the "parent or parents permit the minor to reside with another person and do not provide the other person with legal authority for the minor's care and maintenance, and the minor is not residing with his or her parents when the petition is filed." MCL 700.5204(2)(b). The "guardianship status continues until terminated . . . ." MCL 700.5201. But unlike in the child-protective action, the court and parties are not inevitably required to take further action to determine whether

---

judgment is collateral and falls within the rule."). Many commentators have noted that the distinction between direct and collateral attacks is hazy. See generally Restatement Judgments, 2d, Introductory Note, § b, p 140; Comment, *The Value of the Distinction Between Direct and Collateral Attacks on Judgments*, 66 Yale L J 526, 533 (1957).

the guardianship should be terminated. The only relevant further step the court must take is to "review" the "guardianship . . . as it considers necessary" or "annually if the minor is under 6 years of age." MCL 700.5207(1). At the end of a review, the court can continue the guardianship or terminate it after notice and a hearing. MCL 700.5207(3)(a) and (b)(*iii*); MCL 700.5209(2). Otherwise, with some limited exceptions inapplicable to the present issue, the guardianship continues uninterrupted unless the minor's parent petitions for its termination. MCL 700.5208(1).[6] If that happens—and nothing requires the parents to file this petition—the court will hold a hearing and can terminate the guardianship if it is in the minor's best interests or can continue the guardianship for not more than a year, during which time further review would be conducted. MCL 700.5209.[7]

In the present case, the probate court imposed the guardianship in 2015 and petitioner did not appeal that ruling. Later, however, petitioner filed two petitions to terminate the guardianship, the first in 2016 and the second (at issue here) in 2018. In support of the second petition, she asserted that the statutory grounds for implementing the guardianship in 2015 were unsatisfied. The dispositive question is whether this challenge is a collateral attack precluded by the collateral-bar rule. It seems clear that the statutory procedures used here are not tantamount to a direct appeal of the guardianship decision. Cf. *Ingram*, 439 Mich at 291 n 1. Petitioner has invoked a separate statutory process for terminating a guardianship that has already begun, not one designed for preventing the establishment of a guardianship in the first place. See MCL 700.5208 and 700.5209. Of course, it might be argued that this statutory termination process enables a petitioner to raise challenges to the earlier guardianship determination. Nothing in the statute expressly disallows such challenges. But by requiring the court to determine whether termination is in the best interests of the child, the process seems geared toward something other than determining whether a guardianship was properly instituted in the first instance. And, indeed, the Court of Appeals here did not undertake to review or analyze any best-interest factors. Instead, it looked solely to the initial defect.[8]

---

[6] Because this form of guardianship is for minors, the "guardian's authority and responsibility terminate upon . . . the minor's . . . attainment of majority." MCL 700.5217.

[7] The statute also provides for an alternative, "limited" guardianship. See MCL 700.5205. As that form of guardianship was not at issue in this case, my discussion is limited to full guardianships.

[8] The statute elsewhere seems to recognize the difference between preventing a guardianship and terminating one. See MCL 700.5203 ("A minor 14 years of age or older who is the subject of a parental appointment [of a guardian] may prevent an appointment or cause it to terminate by filing with the court . . . a written objection to the appointment . . . .").

Assuming that petitioner's challenge here is not covered by MCL 700.5208 and 700.5209, we must determine whether the petition to terminate represents a separate "action" or "proceeding." *Ferranti*, 504 Mich at 22. In this context, "action" means "[a] civil or criminal judicial proceeding." *Black's Law Dictionary* (11th ed). A "proceeding," in turn, can mean either the "regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment," or "[a]n act or step that is part of a larger action." *Black's Law Dictionary* (11th ed).[9] It could be argued that, under the latter definition of "proceeding," the statutory process for petitioning to terminate the guardianship is a separate proceeding from the initial imposition of the guardianship. Under this line of thinking, the petition process is not continuous with the initial determination. Rather, it is a proceeding contingent upon the parent's filing the petition and it focuses on a different matter, i.e., whether a guardianship already in place should be terminated. And aside from this mechanism, there is generally no further decision the court must make regarding termination.[10] In this regard, the process is not unlike criminal probation, which also occurs after a judgment has entered in the case. See MCL 771.1. The court continues to keep the case file open but generally must undertake no more than routine review. The fact that the case remains open does not entitle the probationer to directly attack his conviction. See generally MCR 6.501 (outlining the procedures for postappeal challenges in criminal matters). It could also be contended that the practical effects of the Court of Appeals' decision here show that termination petitions should be considered different proceedings. Under the Court of Appeals' logic, it would appear that a petitioner could use the termination process to challenge a defect in the initial determination years later. And it would not matter that the petitioner had filed previous termination petitions that failed to address the defect.[11]

---

[9] See also *Maples v State*, ___ Mich ___ (2021) (Docket No. 160740), slip op at pp 6-7 (ZAHRA, J., dissenting) (defining "proceeding" as, among other things, " 'a particular step or series of steps in the enforcement, adjudication, or administration of rights, remedies, laws, or regulations,' including 'an action, hearing, trial, or application before the court,' " and noting that the plural "proceedings" is more comprehensive).

[10] That the initial determination and the subsequent petition might be different proceedings is also suggested by the fact that respondents here were the petitioners when they filed for a guardianship; now, they are on the other side and the mother, who was the initial respondent, is the petitioner driving the proceedings.

[11] In an appropriate case, I would also consider whether a challenge such as petitioner's here is untimely and, if so, what effect that would have on our review. In *Ferranti*, we suggested that the issue of timeliness was a question separate from whether the challenge was collateral or direct. *Ferranti*, 504 Mich at 24-25. Assuming that the present challenge is not a collateral attack and that it is not a valid attack under MCL 700.2508 and 700.5209, then it must represent a direct appeal of the initial guardianship determination. A party can appeal of right "a final order affecting the rights and interests

I would also order additional argument on the statutory interpretation issue in this case: "whether, to establish a guardianship under MCL 700.5204(2)(b), a parent must intend that his or her child permanently reside with another person." *Orta*, 505 Mich at 1137. At oral argument, respondent's counsel noted the constitutional "presumption that fit parents act in the best interests of their children." *Troxel v Granville*, 530 US 57, 68 (2000) (opinion of O'Connor, J.). Counsel contended that the statutory guardianship proceedings were constitutional only because of the high bar for establishing a guardianship, including the need to show that the parent, among other things, intend that the child reside with a third party for the "long term." I would examine whether this construction of the statute is reasonable and necessary to save it from constitutional infirmities.[12] See *In re Certified Questions from US Dist Court, Western Dist of Mich, Southern Div*, 506 Mich 332, 409 (2020) (explaining the "constitutional doubt" canon of interpretation, under which a reasonable interpretation of statutory language is adopted to avoid grave doubts about the statute's constitutionality under other interpretations). In this regard, I would note that while the Court of Appeals has interpreted the statute to require an intent that the child permanently reside with another person, the Court of Appeals did not consider the meaning of "reside." See *Deschaine v St Germain*, 256 Mich App 665, 669-670 (2003). As currently defined by a lay dictionary, "reside" in this context means "to dwell permanently or continuously : occupy a place as one's legal domicile." Merriam-Webster.com Dictionary, *Reside* <https://www.merriam-webster.com/dictionary/reside> (accessed August 17, 2021) [https://perma.cc/RDG2-GBVU]. This definition is broader than the one assumed by the Court of Appeals and would seem to encompass circumstances in which the parent intends to *indefinitely* (but not permanently) leave the child with another person.

---

of an adult or a minor in a guardianship proceeding under the Estates and Protected Individuals Code [MCL 700.1101 *et seq*.]." MCR 5.801(A)(3). An appeal of right generally must be made within 21 days after the judgment or order being appealed. See MCR 7.204(A). Here, petitioner's challenge came years after the guardianship determination. In a future case, I would examine whether that initial determination is a final order that must be appealed within 21 days and, if so, what effect this has on appellate review of these challenges. The respondents have not raised this issue here and so I would not interject it into the case.

[12] It is worth noting that we have ordered argument on the related but broader issue of "whether MCL 700.5204(2)(b) is unconstitutional because it does not allow for a presumption that a fit parent's decision is in the best interest of the child . . . ." *In re Guardianship of Versalle*, ___ Mich ___, ___; 960 NW2d 537, 537 (2021).

I do not believe these arguments have been sufficiently sharpened in this case, and I would grant leave to further consider them. For these reasons, I dissent from the Court's denial order.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

August 27, 2021



Clerk

t0824