*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 2, 2021

Plaintiff-Appellee,

v

No. 351606
Ionia Circuit Court
LC No. 2019-017719-FH

JEREMIA SCOTT JOHNSON,

Defendant-Appellant.

Before: BOONSTRA, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his September 25, 2019 jury trial convictions for operating a vehicle while intoxicated (OWI), third offense, MCL 257.625(1); MCL 257.625(9)(c); operating a vehicle with a suspended license, second offense, MCL 257.904(1); MCL 257.904(3)(b); and operating a vehicle without security, MCL 500.3102. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 8 months to 15 years' imprisonment for operating while intoxicated, and to 15 days in jail for the two remaining offenses.

On appeal, defendant argues that (1) defense counsel was ineffective during the plea-bargaining process; (2) the trial court erred when it considered one of defendant's prior OWI charges because he was not represented by counsel for the prior charge, and he did not validly waive his right to counsel; (3) the prosecution committed misconduct when it argued facts not in evidence; (4) the prosecution committed misconduct by making false statements of law; and (5) defendant's conviction of driving without insurance was based solely on his statement to police and therefore did not comply with the *corpus delicti* rule. Finding no error warranting reversal, we affirm.

This case arises from defendant's third OWI conviction. Defendant was speeding past a Michigan State Trooper, and subsequently crashed his vehicle. Defendant did not provide insurance or a valid license to the Trooper upon request.

At trial, the prosecution called one witness: Michigan State Trooper Jennifer Alway. On January 1, 2019, Trooper Alway was patrolling M-66 in Berlin Township, Michigan, in Ionia County. As Trooper Alway was patrolling, her in-car radar showed that defendant was driving

-1-

68 miles per hour in a 55-mile-per-hour zone. Trooper Alway turned around to stop defendant's vehicle, and her radar then showed that defendant was traveling 90 miles per hour. As Trooper Alway was catching up to defendant's vehicle, she observed the vehicle go off the roadway to the right. Trooper Alway testified, "He went into the grass, up an embankment, went back over through the grass and went down the other side of the embankment and into the ditch and back on M-66."

Trooper Alway turned on her overhead lights and stopped defendant's vehicle. As Trooper Alway approached defendant's vehicle, she could smell a strong odor of marijuana. Defendant was revving his engine and sweating profusely as he spoke to Trooper Alway. Defendant admitted to smoking marijuana approximately 20 minutes before the traffic stop. When Trooper Alway asked for defendant's driver's license, defendant handed her a state identification and said that his license was not valid. The prosecution admitted a letter from the Michigan Secretary of State indicating that defendant's license was revoked at that time. Trooper Alway asked defendant for his proof of insurance, and defendant replied that he "didn't think there was any on it." Defendant told Trooper Alway that he stopped making his insurance payments "because he couldn't afford it." Trooper Alway noticed that defendant had run over a fencepost when he left the roadway, and defendant did not realize that he had hit it.

Trooper Alway ran a series of sobriety tests on defendant, and concluded that on each test defendant gave some indicators that he was intoxicated. Defendant also had a green container in his vehicle, which contained marijuana wax. Trooper Alway placed defendant under arrest and took him to the Ionia Hospital for a blood draw. Defendant's lab reports showed that defendant's blood contained THC [tetrahydrocannabinol] which is found in marijuana, and Buprenorphine, also known as Suboxone, which is a schedule three controlled substance and is a narcotic. Defendant had a prescription for Suboxone and took it under medical supervision.

The trial court denied defendant's motion to dismiss the charges at the outset of trial and for a directed verdict following presentation of the prosecution's proofs. Defendant was convicted as charged and now brings this appeal.

Defendant first argues that defense counsel was ineffective during the plea-bargaining process. Generally, whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. See *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). This Court reviews constitutional questions de novo and a trial court's factual determinations for clear error. *Id*. A factual finding is clearly erroneous if we are "left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). Although defendant has preserved the issue by filing a motion for remand in this Court, because we denied the motion and no evidentiary hearing has been held, review is limited to errors apparent in the lower court record. See *People v Abcumby-Blair*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 347369); slip op p 8.

"As at trial, a defendant is entitled to the effective assistance of counsel in the plea-bargaining process." *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014). To be

entitled to relief for ineffective assistance, a defendant must meet *Strickland*'s[1] two-pronged test. *Id*. at 592. First, a defendant must establish deficient performance, which is that defense counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id*. This is a heavy burden because defense counsel's performance is generally presumed to be effective and sound trial strategy. *People v Dendel*, 481 Mich 114, 125; 748 NW2d 859 (2008).

Second, a defendant must establish prejudice, which is that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *Id*. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. In the context of pleas, a defendant must specifically show that the outcome of the plea process would have been different with competent advice. *Douglas*, 496 Mich at 592. Our Supreme Court has applied the following three-part test when a defendant claims ineffective assistance for rejecting a plea offer and standing trial: the defendant must show that, but for the ineffective advice of counsel, (1) there is a reasonable probability that the plea offer would have been presented to the trial court (i.e., that the defendant would have accepted the plea), (2) that the trial court would have accepted the terms of the offer, and (3) that under the plea offer's terms, the conviction or sentence would have been less severe than under the judgment and sentence that in fact were imposed. *Id*.

"[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v Frye*, 566 US 134, 145; 132 S Ct 1399; 182 L Ed 2d 379 (2012). "The test is whether the attorney's assistance enabled the defendant to make an informed and voluntary choice between trial and a guilty plea." *People v Corteway*, 212 Mich App 442, 446; 538 NW2d 60 (1995). Accordingly, this Court has stated:

> Guilty pleas have been found to be involuntary or unknowing on the basis of ineffective assistance of counsel where defense counsel failed to explain adequately the nature of the charges or the consequences of the guilty plea. Guilty pleas have also been found to be involuntary or unknowing where counsel has failed to discuss possible defenses to the charges to which the defendant is pleading guilty. In these situations, counsel's deficient representation effectively renders the defendant's guilty plea involuntary because it deprives the defendant of the ability to make an intelligent and informed choice from among his alternative courses of action. [*Id*. at 445 (citation omitted).]

Because it is a defendant's burden to prove both deficient performance and prejudice, it is also the defendant's burden to establish the factual predicate for the claim. *People v Hoag*, 460 Mich 1, 5-6; 594 NW2d 57 (1999).

In this case, defendant was offered a plea at the outset of the preliminary examination. The following is the dialogue concerning the plea offer:

---

[1] *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

[*The Prosecutor*]: Yeah, I'd like to put the offer on the record, unless defense counsel wants to do it—

*The Court*: You may.

[*The Prosecutor*]: —put the offer on the record? Did you want to put the offer on the record?

[*Defense Counsel*]: The off—the offer in this case was plead—plead as charged. I am—Your Honor, it's my understanding was just the offer on the record was plead as charged.

[*The Prosecutor*]: Well what I'm—I see numerous offers in this case. It looks like the last one would be plead guilty to count one OWI third, dismiss count two and count three and the habitual fourth, Killebrew nine months confinement, fines, costs, restitution, PSI, probation. So the defendant's choosing to exercise his right to run the preliminary examination. With that, the People may-made this offer—will expire and it may not be offered again.

*The Court*: Anything else to place on the record?

[*Defense Counsel*]: May I inquire of my client, Your Honor?

*The Court*: Sure.

[*Defense Counsel*]: Jeremia, you heard the offer that the Prosecutor placed on the record?

*Defendant*: Yes.

[*Defense Counsel*]: And—and are you accepting that offer?

*Defendant*: No.

[*Defense Counsel*]: Thank you, Your Honor. Nothing further.

Defendant argues that he lacked sufficient information to make an informed decision. We agree. In fact, it appears that there was no information or counsel given to defendant. Defense counsel did not go off the record to explain the plea to defendant or even try to explain the plea to defendant on the record. Defense counsel simply asked if defendant heard the offer and whether he would be accepting it. "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler v Cooper*, 566 US 156, 168; 132 S Ct 1376; 182 L Ed 2d 398 (2012). However, in this case, defendant received no advice of counsel concerning the plea offer.

Defense counsel was required to tell defendant the direct consequences of the plea, see *People v Fonville*, 291 Mich App 363, 385; 804 NW2d 878 (2011), and was required to convey any favorable terms of the plea to defendant. See *Frye*, 566 US at 145. But defense counsel failed

-4-

to explain any positive or negative consequences of the plea—the record is simply bare. It is apparent from the record that defense counsel himself was unaware of the plea offer because he thought that the only offer was "plead as charged." At sentencing, defense counsel continued to state that that "[t]here was no plea agreements in this case," even though a plea was clearly stated before the preliminary exam. Trial counsel could not have properly advised defendant of the plea deal when he did not know that there was a plea offer, let alone properly advise defendant of the benefits of the plea offer. Therefore, defense counsel was objectively ineffective for failing to explain the plea offer to defendant.

Defendant concurrently argues that defense counsel was ineffective because defense counsel reassured defendant that the charges would be dismissed at trial and that the prosecution had a weak case. But this argument fails because defendant continued to maintain his innocence, and defense counsel cannot be faulted for relying on defendant's assertions of innocence. See *People v Frazier*, 478 Mich 231, 244; 733 NW2d 713 (2007).

Relatedly, defendant briefly argues that he was prejudiced because he would have pleaded guilty if counsel was effective. However, defendant has failed to show that, but for the ineffective advice of counsel, there is a reasonable probability that the plea offer would have been presented to the trial court (i.e., that the defendant would have accepted the plea). See *Douglas*, 496 Mich at 592. Defendant maintained his innocence from beginning to end, and he presented a strong defense at trial. Defendant planned to fight the case from the outset. Defense counsel noted that defendant wanted a preliminary exam and a trial. In defendant's affidavit, he still did not state that he would have accepted the plea; rather he suggested that he should have had proper time to consider the offer and to work toward a new plea offer.

Furthermore, defendant has failed to establish that if the plea agreement had been presented to the court, the court would have accepted it. At both sentencing hearings, the trial judge expressed serious concerns about defendant's criminal history and the court's obligation to protect the public. At the first sentencing hearing, the trial judge indicated that if defendant was not eligible for sobriety court, the sentence would involve a prison term. Therefore, defendant has failed to establish the factual predicate of his claim, see *Hoag*, 460 Mich at 6. See *Douglas*, 496 Mich at 598. Consequently, defendant has failed to show that he was prejudiced. See *id*.

Next, defendant argues that the trial court erred when it considered one of defendant's prior OWI charges for enhancement purposes because he was not represented by counsel. We disagree. We review for clear error the trial court's factual findings underlying a waiver of counsel. See *People v Williams*, 470 Mich 634, 640; 683 NW2d 597 (2004). We review de novo, as a question of law, the issue whether defendant's waiver of counsel was knowing, intelligent, and voluntary. See *id*.

The "failure of a plea-taking court to adhere to applicable plea-taking requirements during the plea proceeding does not provide a defendant the opportunity to challenge by collateral attack." *People v Ingram*, 439 Mich 288, 294-295; 484 NW2d 241 (1992). "The validity of such a plea, where the defendant was represented by an attorney when entering the plea or when the defendant intelligently waived the right to counsel, including the right to court-appointed counsel if indigent, is unassailable." *Id*. at 295. Therefore, we must determine whether defendant's waiver of counsel was proper. See *id*.

The Sixth Amendment right to counsel applies to the plea-bargaining process. *Cooper*, 566 US at 162-163. However, under the United States and Michigan Constitutions a criminal defendant is entitled to self-representation, see Const 1983, art 1, § 13; MCL 763.1; *Faretta v California*, 422 US 806, 812, 95 S Ct 2525, 45 LEd2d 562 (1975), and a defendant can waive his or her right to counsel, *Montejo v Louisiana*, 556 US 778, 786; 129 S Ct 2079; 173 L Ed 2d 955 (2009). Valid waiver of the right to counsel requires that a trial court make three findings. See *People v Anderson*, 398 Mich 361, 367-368; 247 NW2d 857 (1976). Our Supreme Court has stated,

> First, the waiver request must be unequivocal. Second, the trial court must be satisfied that the waiver is knowingly, intelligently, and voluntarily made. To this end, the trial court should inform the defendant of potential risks. Third, the trial court must be satisfied that the defendant will not disrupt, unduly inconvenience, and burden the court or the administration of court business. [*Williams*, 470 Mich at 642.]

Analogously, MCR 6.005(D) and (E), and MCR 6.610(D) list similar requirements. These requirements do not need to be read as a "litany" because "substantial compliance" is adequate to protect a defendant's rights. *People v Russell*, 471 Mich 182, 191; 684 NW2d 745 (2004). "[W]hether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Id*. at 201.

Before defendant pleaded guilty to his second OWI, he signed a SCAO-approved advice-of-rights form. Additionally, the trial court found that defendant was orally informed of his right to counsel. The trial court held that the combination of the advice-of-rights form and the questions and answers from the district court met the requirements for a valid waiver of counsel. Defendant also was experienced with the criminal justice system, as that was his second OWI and he is currently a fourth-offense habitual offender. Therefore, when looking at the totality of the circumstances, the district court *substantially* complied with the waiver requirements, and defendant's waiver of counsel was knowingly, intelligently, and voluntarily made. See *Williams*, 470 Mich at 642; see also *Russell*, 471 Mich at 191.

Defendant further argues that the prosecutor committed misconduct during opening statements and closing arguments, and that defense counsel was ineffective for failing to object. We disagree. Because defendant failed to object to the prosecutor's statements, this issue is unpreserved. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). We review a claim of prosecutorial misconduct de novo to determine whether the misconduct deprived the defendant of a fair trial. See *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013). For unpreserved claims of prosecutorial misconduct, we examine whether the claimed error amounted to plain error that affected the defendant's substantial rights. See *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013). An unpreserved claim of prosecutorial misconduct will not warrant relief unless the prejudicial effect was so great that it could not have been cured by an appropriate instruction. *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008).

"The purpose of closing argument is to allow attorneys to comment on the evidence and to argue their theories of the law to the jury." *People v Finley*, 161 Mich App 1, 9; 410 NW2d 282 (1987), aff'd 431 Mich 506 (1988). "[A] prosecutor is given great latitude to argue the evidence and all inferences relating to his theory of the case." *People v Thomas*, 260 Mich App 450, 456; 678 NW2d 631 (2004). But a prosecutor may not argue facts that were unsupported by the evidence. See *Unger*, 278 Mich App at 241. "A prosecutor's remarks must be examined in context and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial to determine whether a defendant was denied a fair and impartial trial." *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005),

In this case, defendant argues that the prosecutor engaged in misconduct when the prosecutor argued facts not in evidence. Defendant argues that the first instance of misconduct was when the prosecutor told the jury twice that defendant smoked "a bowl of marijuana," although defendant's testimony was that he only took "one hit" of the bowl of marijuana. Defendant argues that the second instance of misconduct was when the prosecutor told the jury that defendant admitted that he was too impaired to drive, although defendant actually said that he was nervous because he was driving without a license.

The prosecutor concedes that defendant testified that he only took one hit. But the prosecution argues that defendant's blood contained 14 nanograms of THC. Defendant also exhibited poor driving, had minor deficiencies in his sobriety-test performance, and his vehicle smelled of marijuana. The prosecutor argues that reasonable inferences could be drawn from the evidence that defendant actually smoked the entire bowl of marijuana.

The relevant dialogue from the prosecutor's closing argument and rebuttal are as follows:

[*The Prosecutor's Closing Argument*]: Defendant's manner of driving was not normal. Was his judgment normal? *He testified that he smoked a bowl of marijuana and he smokes marijuana to sleep*. Then, he wants to go into work to make money, *so he says I went against my better judgment. I knew I was not supposed to be driving. He's telling you that his judgment was not normal that night*. What was the result of him being under the influence when driving? He also did not exhibit normal driving behavior. How normal is it to—well, he said he was able to see where he was going. He said he was distracted. And the turn that he takes every time when he's going to work he was unable to execute it, and then he drove off the roadway. He made a decision and a choice to drive after smoking marijuana. He says he smokes marijuana to sleep. So his way of driving is a key factor that you need to consider, but you can also consider the evidence that Trooper Alway testified to. The smell of marijuana, which immediately she started to think well, I'm investigating marijuana in this case but I'm also gonna (sic) have the defendant do some standardized field sobriety tests.

* * *

[*The Prosecutor's Rebuttal*]: He's right that he wasn't charged with use of a controlled substance. He wasn't charged with using marijuana. He wasn't charged with using Suboxone. He was charged with the crimes that he committed

on that day, that night, January 1st, 2019, because he was committing a crime. When *after smoking a bowl of marijuana* that he uses to sleep and also while having Suboxone, which is a narcotic, in his blood he decides so he can make a little bit more money, that he is going to drive to work.

Defendant's relevant testimony was as follows:

[*Defendant*]: At that point, I had planned to just stay home. I use marijuana to sleep and that's what I had planned to do. *I had packed a bowl and I had taken one hit*. And in that process I thought about the money I would have lost by not going to work. Like I said, on a normal day I never even would have even risked it. It was New Year's Day and I stood to lose, not only double time, but double time and a half, which would have been time and a half for working the holiday and then holiday pay. And against my better judgment, my worst judgment, I decided to drive. *But like I said, I packed a bowl, I took one hit and in that time is when I decided to drive*.

\* \* \*

[*Defense Counsel*]: Okay. And the reason that you had gone off the road slightly and hit that post and the wire, is that because you were driving too fast or because you had taken a couple hits on marijuana?

[*Defendant*]: It was because I was going too fast just to make sure of being nervous as soon as I passed the cop. I mean my heart started pounding. I knew I wasn't supposed to be driving. I knew I was probably going to jail. And just between that being nervous and then distracted, watching her in my rear view, it all kind of led to—

\* \* \*

[*Defendant*]: Just that, like I said earlier, I had taken *a hit of marijuana*. You couldn't really hear it. She went onto say do you always smoke a joint before driving, which I don't even smoke joints. And I—that wasn't what I had said.

In this case, there was no prosecutorial misconduct. Defendant testified that he took one hit of marijuana. However, defendant did not explain the size of his "bowl" or "hit" of marijuana. Defendant did not argue at trial or in his brief that one "hit" of marijuana could not have been the size of his "bowl" of marijuana. And this Court cannot assume these facts without a record. Further, the prosecutor never specifically stated that defendant smoked the *entire* "bowl" of marijuana, but instead vaguely stated that defendant smoked "a bowl" of marijuana.

Additionally, the prosecutor could have drawn reasonable inferences from the evidence that defendant did smoke the entire "bowl" of marijuana. Defendant was driving extremely erratically and crashed his vehicle; defendant ran over a post and did not realize it; his vehicle smelled of marijuana; he was sweating and appeared nervous; he was revving his engine while stopped; his blood contained THC; and he did fail some portions of his field sobriety tests. Further, defense counsel implied that defendant took more than one hit of marijuana when he asked, "[I]s

that because you were driving too fast or because you had taken *a couple hits* of marijuana?" Defendant did not correct defense counsel or deny taking a "couple hits" of marijuana. Therefore, we conclude that the prosecutor argued reasonable inferences from the evidence. See *Unger*, 278 Mich App at 236.

There is also no merit to defendant's claim that the prosecutor misinterpreted defendant's statements of driving against his judgment. Defendant clearly stated, "And against my better judgment, my worst judgment, I decided to drive." The prosecutor was right to infer that defendant was going against his better judgment when he drove after smoking marijuana. Nowhere in the preceding or subsequent sentences was defendant referring specifically to his license being suspended, as defendant argues in his brief. In fact, the next sentence from defendant was, "But like I said, I packed a bowl, I took one hit and in that time is when I decided to drive." Therefore, there was no prosecutorial misconduct during closing arguments.

Additionally, the trial court issued a curative instruction when it stated,

> The lawyers' statements and arguments are not evidence. They are only meant to help you understand the evidence and each side's legal theories. You should only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge.

Because "[j]urors are presumed to follow their instructions, and it is presumed that instructions cure most errors," *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011), defendant has not established that he was prejudiced by the prosecutor's alleged misstatements. Therefore, defendant has failed to establish a claim of prosecutorial misconduct.

Defendant also argues that the prosecutor committed misconduct when he misstated the law during opening statements. "A prosecutor's clear misstatement of the law that remains uncorrected may deprive a defendant of a fair trial." See *People v Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002). "However, if the jury is correctly instructed on the law, an erroneous legal argument made by the prosecutor can potentially be cured." *Id*.

In this case, defendant argues that the prosecutor misstated the law when he said the following during opening statements:

> What's that evidence gonna (sic) be? That evidence is gonna (sic) include sworn testimony from Trooper Jennifer Alway and Trooper Megan Moryc. You'll also hear sworn testimony from Milica Bowman, who works at Sparrow Ionia Hospital who drew Mr. Johnson's blood. You'll also hear sworn testimony from Samantha Kellogg, who tested Mr. Johnson's blood at a lab in Lansing, and you'll also hear from Mr. Logan Albertson, who also tested Mr. Johnson's blood at a lab in Lansing. Sworn testimony is evidence. Things that witnesses say on the witness stand is evidence.

Specifically, defendant argues that the prosecutor committed misconduct because when he said the troopers' testimony would be "sworn testimony," he was implying that the jury had to believe the troopers' testimony. We disagree.

It is a common-sense notion that testimony is evidence, and "testimony alone can provide sufficient evidence to support a conviction." *People v DeLeon*, 317 Mich App 714, 719; 895 NW2d 577 (2016). It is also a common-sense notion that testimony is sworn by an "oath or affirmation." MRE 603. Therefore, all testimony is indeed sworn testimony.

In this case the prosecutor did not misstate the law. In fact, he correctly stated that the troopers' testimony would be "sworn testimony." The trial court echoed this during jury instructions by stating:

When it is time for you to decide the case, you are only allowed to consider the evidence that was admitted in the case. Evidence includes only the *sworn testimony* of witnesses, the exhibits admitted into evidence, and anything else I tell you to consider as evidence.

The prosecutor said exactly what the jury instructions conveyed to the jury. Therefore, the prosecutor made a correct statement of law, and there was no prosecutorial misconduct. As shown, the trial court did issue curative instructions regarding any sworn testimony. Therefore, even if there was prosecutorial misconduct, it was not prejudicial. See *Mahone*, 294 Mich App at 213.

Defendant additionally argues that defense counsel was ineffective for failing to object to the prosecutor's statements during closing arguments. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

In this case, defense counsel was not required to make a meritless objection to the prosecutor's closing argument and opening statement. See *id*. Also, because defendant has failed to establish any prejudice from the failure to object, defendant's claim of ineffective assistance must fail. See *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001) (stating that a defendant must establish that defense counsel's performance prejudiced the defendant to succeed on a claim of ineffective assistance of counsel).

Defendant finally argues that the *corpus delicti* rule was not satisfied because the prosecution failed to show any proof that defendant did not have insurance other than defendant's statements to Trooper Alway. We disagree. We review a lower court's decision regarding the *corpus delicti* requirement for an abuse of discretion. *People v Burns*, 250 Mich App 436, 438; 647 NW2d 515 (2002). "A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes." *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008). "However, whether a rule or statute precludes admission of evidence is a matter of law and is reviewed de novo." *Id*. A "challenge to the admission of a defendant's statement under the *corpus delicti* rule constitutes a challenge to the admission of evidence, not to the sufficiency of evidence." *People v Harden*, 474 Mich 862 (2005).

The *corpus delicti* rule's purpose "is to prevent the use of a defendant's confession to convict him of a crime that did not occur." *People v Ish*, 252 Mich App 115, 116; 652 NW2d 257 (2002). "The rule bars the prosecution from using a defendant's confession in any criminal case unless it also presents direct or circumstantial evidence independent of the defendant's confession that the specific injury or loss occurred and that some criminal agency was the source or cause of

the injury." *Id*. Traditionally, the *corpus delicti* rule only applied to homicide cases, but it now applies to more crimes. *People v Cotton*, 191 Mich App 377, 385; 478 NW2d 681 (1991).

*Corpus delicti* may be established by direct evidence, circumstantial evidence, and reasonable inferences drawn from such evidence. See *People v Modelski*, 164 Mich App 337, 341-342; 416 NW2d 708 (1987). Further, the *corpus delicti* need only be proved by a preponderance of the evidence. *Id*. at 342.

To convict defendant of operating a vehicle without security, the prosecution needed to prove that (1) defendant was the owner or a motor vehicle; (2) in order to operate the motor vehicle, the motor vehicle was required to have security (insurance); (3) defendant operated the vehicle on a public highway in the State of Michigan; and (4) defendant did not have security on the vehicle. See MCL 500.3102. Further, if a defendant did not produce evidence that the vehicle had sufficient security, there is a rebuttable presumption that the motor vehicle did not have sufficient security. See MCL 500.3102(3).

In this case, defendant only challenges element (4), which is that his vehicle did not have sufficient security. The trial court found that there was circumstantial evidence relating to elements (1) through (3), and that the prosecution did not need to produce independent evidence on every element. Indeed, "it is not necessary that the prosecution present independent evidence of every element of the offense." *Ish*, 252 Mich App at 117. *Corpus delicti* "is satisfied and a defendant's confession may be admitted into evidence when the prosecutor presents direct or circumstantial evidence, independent of the confession, establishing (1) the occurrence of the specific injury and (2) some criminal agency as the source of the injury." *Cotton*, 191 Mich App at 385. The criminal agency in most *corpus delicti* cases is evidence that a homicide was committed, see *People v McMahan*, 451 Mich 543, 550; 548 NW2d 199 (1996). In this case, the *corpus delicti* would be that defendant did not actually have security on his vehicle.

The statute is clear that if a defendant does not produce proof of security, there is a rebuttable presumption that the vehicle did not have sufficient security. See MCL 500.3102(3). In this case, defendant did not produce his insurance. Trooper Alway asked defendant for his proof of insurance, to which defendant replied that he "didn't think there was any on it." Defendant told Trooper Alway that he stopped making his insurance payments "because he couldn't afford it." Because of defendant's failure to produce proof of insurance upon Trooper Alway's request, a rebuttable presumption arose that defendant did not have insurance on the vehicle, independent of his statements to Trooper Alway confirming the lack of insurance. See MCL 500.3102(3). Further, defendant testified at trial, and he did not offer testimony rebutting the presumption. When defendant failed to produce proof of insurance, reasonable inferences could be drawn that defendant did not have insurance to satisfy the requirement, which would satisfy the *corpus delicti* rule by a preponderance of the evidence. See *Modelski*, 164 Mich App at 341-342. Because there was a rebuttable presumption that defendant did not have insurance, and defendant did not do anything to rebut that presumption, defendant's argument fails.

Affirmed.

/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola

-11-